Ben W. ALLUSTIARTE, et al., Plaintiffs,

v.

UNITED STATES, Defendant.

No. 99–1010L.

United States Court of Federal Claims.

May 24, 2000.

William T. Barrante, Watertown, CT, attorney of record for the plaintiffs.

Susan V. Cook, General Litigation Section, Environment and Natural Resources Division, United States Department of Justice, Washington, D.C., attorney of record for the defendant.

## OPINION

HORN, Judge.

### FINDINGS OF FACT

The plaintiffs, Ben W. Allustiarte, et al., filed a complaint and request for damages with this court on December 22, 1999. For the purposes of this motion, the facts are not in dispute. Plaintiffs state, "In each of the counts the action of the bankruptcy Judge was 'authorized,' that is, the judges acted within their statutory powers under the bankruptcy statutes."

The complaint contains ten counts from multiple plaintiffs who allege that the rulings issued by the bankruptcy courts involved in their respective proceedings were improper and caused them significant losses. Plaintiffs contend that the actions of the bankruptcy courts constitute a taking of plaintiffs' property without just compensation, in violation of the Fifth Amendment to the United States Constitution. Plaintiffs also allege that because of defendant's failure to pay just compensation to the plaintiffs, the orders, decrees and judgments of the bankruptcy courts should be considered "void judgments within the meaning of Rule 60(b)(4) of the Federal Rules of Civil Procedure, as adopted by the United States Court of Federal Claims."

In the words of count 1 of the complaint, "Ben W. Allustiarte and Linda M. Allustiarte filed a petition for a real estate arrangement as farmers under Chapter XII of the Bankruptcy Act of 1898" on August 15, 1979.

They allege that the bankruptcy trustee sold plaintiffs' real estate at prices below its fair market value, resulting in a net loss of $24,014,194.00.

In count 2, Benjamin A., Gregory and Gayle Allustiarte, along with Marianne A. Pack, allege that two pieces of real estate held jointly between them were wrongfully included in the bankruptcy estates of Ben W. and Linda Allustiarte. Plaintiffs in count 2 claim damages in the amount of $5,196,197.68.

Plaintiff in count 3, William J. Connolly, filed for bankruptcy in February 1988 under Chapter 11 of the Bankruptcy Code. Plaintiff alleges that the court appointed trustee wrongfully devastated his estate, failed to satisfy IRS claims against plaintiff, and failed to account for income earned by the estate from oil leases. Plaintiff Connolly claims damages in the amount of $4,905,255.25.

In count 4, plaintiff, Ruth F. Howard, filed for relief under Chapter 11 of the Bankruptcy Code in July of 1988. Plaintiff claims that she lost $273,000.00 due to the administration of her estate by the court approved bankruptcy trustee.

Plaintiffs in count 5, James D. and Karin Huffer, and Western Investors Group, Inc., which is wholly owned by plaintiffs James D. and Karin Huffer, filed for relief under Chapter 11 of the Bankruptcy Code in 1984. Plaintiffs allege that the bankruptcy trustee devastated their estate by allowing creditors to foreclose on certain pieces of property owned by plaintiffs in actions approved by the Bankruptcy Court. Plaintiffs claim damages in the amount of $1,575,000.00.

In count 6, plaintiff, John L. Johnston, filed for relief in the Bankruptcy Court on April 23, 1990. Plaintiff claims that the court appointed trustee improperly devastated plaintiff's estate in various respects, resulting in a loss of $945,789.32 to plaintiff.

In count 7, plaintiff, Raj Kumar, filed for relief under the Bankruptcy Code in September 1986. Plaintiff complains that the Bankruptcy Court approved the sale of his property to a neighbor and business competitor, despite plaintiff's objections. Plaintiff claims he opposed the sale because of bona fide offers significantly exceeding the offer from his neighbor. Plaintiff claims $1,000,000.00 in damages.

In count 8, plaintiffs, Charles G. and Susan P. Milden, filed for relief under Chapter 11 of the Bankruptcy Code in October 1991. Plaintiffs claim that the court abandoned portions of plaintiffs' property allowing an allegedly undervalued sale. According to the plaintiffs, the trustee settled a lawsuit in which plaintiffs were litigants for less than it was worth. The settlement was approved by the Bankruptcy Court in September of 1993, and in November of 1999, the court approved the trustee's final report. Plaintiffs claim damages in the amount of $55,857,961.20.

Counts 9 and 10 consist of claims from the only creditor-plaintiffs in the lawsuit, Robert and Frances Palmer. Plaintiffs allege that the Bankruptcy Court and its trustee improperly awarded plaintiffs' interests in a debtor's property, precluding plaintiffs from recovering all that they should have received. Count 9 requests damages in the amount of $73,000.00, while count 10 requests damages in the amount of $35,000.00.

## DISCUSSION

The defendant has filed a motion to dismiss pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (RCFC) for lack of subject matter jurisdiction. ' Subject matter jurisdiction may be challenged at any time by the parties, by the court *sua sponte,* or on appeal. *Booth v. United States,* 990 F.2d 617, 620 (Fed.Cir. 1993), *reh'g denied* (1993); *United States v. Newport News Shipbuilding & Dry Dock Co.,* 933 F.2d 996, 998 n. 1 (Fed.Cir.1991). Once jurisdiction is challenged by the court or the opposing party, the plaintiff bears the burden of establishing jurisdiction. *McNutt v. General Motors Acceptance Corp. of Indiana,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936). A plaintiff must establish jurisdiction by a preponderance of the evidence. *Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746, 748 (Fed.Cir.1988); *Alaska v. United States,* 32 Fed.Cl. 689, 695 (1995), *appeal dismissed,* 86 F.3d 1178 (Fed. Cir.1996). When construing the pleadings pursuant to a motion to dismiss, the court

should not grant the motion "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Son Broadcasting, Inc. v. United States*, 42 Fed. Cl. 532, 537 (1998) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (footnote omitted)).

Pursuant to RCFC 8(a)(1) and the Federal Rules of Civil Procedure 8(a)(1), a plaintiff need only state in the complaint "a short and plain statement of the grounds upon which the court's jurisdiction depends." However, "[d]etermination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." *Holley v. United States*, 124 F.3d 1462, 1465 (Fed.Cir. 1997), *reh'g denied* (1997). *Pro se* plaintiffs can be held to less stringent standards than formal pleadings drafted by lawyers. *Boyle v. United States*, 44 Fed.Cl. 60 (1999) (citing *Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652, *reh'g denied*, 405 U.S. 948, 92 S.Ct. 963, 30 L.Ed.2d 819 (1972)), *aff'd*, 200 F.3d 1369 (Fed.Cir.2000). Nonetheless, "conclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss." *Briscoe v. LaHue*, 663 F.2d 713, 723 (7th Cir.1981), *aff'd*, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983).

When deciding on a motion to dismiss based on either lack of subject matter jurisdiction or failure to state a claim, this court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the plaintiff's favor. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *see also Henke v. United States*, 60 F.3d 795, 797 (Fed.Cir.1995); *Hamlet v. United States*, 873 F.2d 1414, 1416 (Fed.Cir.1989). If a defendant challenges jurisdiction or plaintiff's claim for relief, however, the plaintiff cannot rely merely on allegations in the complaint but must instead bring forth relevant, competent proof to establish jurisdiction. *McNutt v. General Motors Acceptance Corp. of Indiana*, 298 U.S. at 189, 56 S.Ct. 780; *see also Land v. Dollar*, 330 U.S. 731, 735, 67

S.Ct. 1009, 91 L.Ed. 1209 (1947); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d at 747; *Catellus Development Corp. v. United States*, 31 Fed.Cl. 399, 404–05 (1994). The court may consider all relevant evidence in order to resolve the factual dispute, including evidentiary matters outside the pleadings. *Indium Corp. of America v. Semi–Alloys, Inc.*, 781 F.2d 879, 884 (Fed.Cir.1985), *cert. denied*, 479 U.S. 820, 107 S.Ct. 84, 93 L.Ed.2d 37 (1986).

In order for this court to have jurisdiction over a plaintiff's complaint, the Tucker Act requires that the plaintiff identify an independent substantive right enforceable against the United States for money damages. 28 U.S.C.A. § 1491 (West 1994 & Supp.1998). The Tucker Act states:

The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C.A. § 1491(a)(1). As interpreted by the United States Supreme Court, this Act waives sovereign immunity to allow jurisdiction over claims (1) founded on an express or implied contract with the United States; (2) for a refund from a prior payment made to the government; or (3) based on federal constitutional, statutory, or regulatory law. *United States v. Testan*, 424 U.S. 392, 400, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976) (quoting *Eastport S.S. Corp. v. United States*, 178 Ct.Cl. 599, 605–06, 372 F.2d 1002, 1009 (1967)); *see also Palmer v. United States*, 168 F.3d 1310, 1314 (Fed.Cir.1999); *Stinson, Lyons & Bustamante, P.A. v. United States*, 33 Fed.Cl. 474, 478 (1995), *aff'd*, 79 F.3d 136 (Fed.Cir.1996). A waiver of traditional sovereign immunity "cannot be implied but must be unequivocally expressed." *Saraco v. United States*, 61 F.3d 863, 864 (Fed.Cir. 1995) (quoting *United States v. King*, 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969)), *cert. denied*, 517 U.S. 1166, 116 S.Ct. 1565, 134 L.Ed.2d 665 (1996).

■ The Tucker Act, however, merely confers jurisdiction on the United States Court of Federal Claims, "it does not create any substantive right enforceable against the United States for money damages." *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980) (quoting *United States v. Testan*, 424 U.S. at 398–99, 96 S.Ct. 948), *reh'g denied*, 446 U.S. 992, 100 S.Ct. 2979, 64 L.Ed.2d 849 (1980); *see also Saraco v. United States*, 61 F.3d at 865 (citing *Zumerling v. Devine*, 769 F.2d 745, 749 (Fed.Cir.1985)) (citing *United States v. Testan*, 424 U.S. at 398, 96 S.Ct. 948); *see also United States v. Connolly*, 716 F.2d 882, 885 (Fed.Cir.1983) (en banc), *cert. denied*, 465 U.S. 1065, 104 S.Ct. 1414, 79 L.Ed.2d 740 (1984). Individual claimants, therefore, must look beyond the jurisdictional statute for a waiver of sovereign immunity. *United States v. Mitchell*, 445 U.S. at 538, 100 S.Ct. 1349. For claims founded on a statute or regulation to be successful, "the provisions relied upon must contain language which could fairly be interpreted as mandating recovery of compensation from the government." *United States v. Testan*, 424 U.S. at 400, 96 S.Ct. 948 (quoting *Eastport S.S. Corp. v. United States*, 178 Ct.Cl. at 607, 372 F.2d at 1009 (1967)); *see also Doe v. United States*, 100 F.3d 1576, 1579 (Fed.Cir.1996), *reh'g denied* (1997).

The plaintiffs in the instant case allege that the actions approved by the bankruptcy courts resulted in takings by the defendant in violation of the Fifth Amendment to the Constitution and that defendant's failure to pay just compensation render the bankruptcy court actions void. As stated by the plaintiffs in their brief on jurisdiction:

> In the present case, the plaintiffs are not seeking to avoid, defeat, or evade any judgment of a bankruptcy court, or to deny any such judgment any effect. They do not seek relief **against any judgment**. They seek compensation as a result of the judgments. And because the Bankruptcy Court does not have the power or authority to order the Government to pay compensation as a result of a Fifth Amendment taking, the plaintiffs would have wasted both time and money if they had even asked the Bankruptcy Court in each respective case to consider that issue.
>
> Plaintiffs do not question the validity of the bankruptcy rulings per se. They claim that the rulings are wrong only if just compensation does not follow.

(Emphasis in original.)

Plaintiffs fail to cite any precedent, nor could this court find any reported cases, in which the discretionary actions of a Bankruptcy Court judge constitute a taking under the Fifth Amendment. Moreover, plaintiffs state in their brief:

> This is an admittedly novel application of the Takings Clause. If the court is looking for a precedent on point, the court will not find it. But that does not mean that the plaintiffs do not have a good cause of action. I believe we are on good ground in this matter. The trend in recent years has been to expand, not contract, the purview of Fifth Amendment takings claims.

In an attempt to demonstrate that a takings requiring compensation can result from decisions issued by the judicial branch, plaintiffs rely, by way of analogy, on two United States Supreme Court cases, and a case in the United States Claims Court, a predecessor to this court, which was affirmed by the United States Court of Appeals for the Federal Circuit and on which certiorari was denied. Contrary to plaintiffs assertions, however, none of these cases supports plaintiffs' argument that the actions of the bankruptcy judges who issued the decisions referred to in the various counts included in plaintiffs' complaint resulted in a constitutional taking.

In *Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555, 573, 578, 55 S.Ct. 854, 79 L.Ed. 1593 (1935), the creditor-plaintiff attacked the constitutionality of a statute, ("the Frazier–Lemke Act, June 28, 1934, c. 869, 48 Stat. 1289, 11 USCA § 203(s)"), which added a section to the Bankruptcy Act on the grounds that the Act violated the Takings Clause of the Fifth Amendment. Plaintiff in that case argued that the Act allowed the bankrupt entity to stall foreclosure proceedings and remain in possession of their mortgaged property, to the detriment of the plaintiff-creditor. The Supreme Court acknowledged that "[t]he bankruptcy power,

like the other great substantive powers of Congress, is subject to the Fifth Amendment," while also noting that "[u]nder the bankruptcy power Congress may discharge the debtor's personal obligation, because ... it is not prohibited from impairing the obligations of contracts." *Id.* at 589, 55 S.Ct. 854 (citations omitted). The Supreme Court noted that there had been instances in the past when "[s]tatutes for the relief of mortgagors, when applied to pre-existing mortgages, have given rise, from time to time, to serious constitutional questions." *Id.* at 581, 55 S.Ct. 854. Based on the issues presented, the Court found that the Frazier–Lemke Act, did constitute a taking of the "substantive rights in specific property acquired by the bank prior to the act." *Id.* at 590, 55 S.Ct. 854. The Supreme Court's opinion in *Louisville Joint Stock Land Bank v. Radford,* however, does not provide any support for plaintiffs' claims. The case stands for the principle that the actions of Congress can result in a Fifth Amendment taking, not for the concept that a taking can occur as the result of the authorized actions of a judicial officer.

Plaintiffs also cite and seek to rely on *United States v. Security Industrial Bank,* 459 U.S. 70, 103 S.Ct. 407, 74 L.Ed.2d 235 (1982), which similarly involved creditors who were seeking just compensation due to the impact of the enactment of a statute, in this case 11 U.S.C. § 522(f)(2), as part of the Bankruptcy Reform Act of 1978, Pub.L. No. 95–598, 92 Stat. 2549, on liens perfected before the Act was passed. The question presented was whether the statute invalidated liens acquired before the enactment date. *Id.* at 71, 103 S.Ct. 407. Again, the Supreme Court acknowledged that under Article 1, Section 8, Clause 4 of the Constitution, it is within the rational exercise of the authority of Congress to retrospectively impair contractual obligations. *Id.* at 74, 103 S.Ct. 407. The Court also agreed with the sentiment expressed in *Louisville Joint Stock Land Bank v. Radford* that if retroactive in nature, the statute could violate the Takings Clause of the Fifth Amendment to the Constitution because it would result in a taking of the creditor's interest held prior to the statute's enactment. *Id.* at 76–78, 103 S.Ct. 407. Because the Court did not find that the statute

was intended to apply to prior established liens, it affirmed the Bankruptcy Court decisions at issue. *Id.* at 82, 103 S.Ct. 407. Once again, the decision cited by the above captioned plaintiffs does not support their theory that the discretionary actions of a bankruptcy judge can result in a constitutional taking of either creditors' or debtors' property.

In addition, plaintiffs try to rely on the Federal Circuit's decision in *Shanghai Power Company v. United States,* 4 Cl.Ct. 237 (1983), *aff'd,* 765 F.2d 159 (Fed.Cir.1985)(Table), *cert. denied,* 474 U.S. 909, 106 S.Ct. 279, 88 L.Ed.2d 243 (1985). In this case, the plaintiff contended that the President's settlement of their claim against China, without the plaintiff's consent and allegedly for a value disproportionate to its real value, entitled the plaintiffs to just compensation under the Fifth Amendment. As part of its analysis, the Federal Circuit suggested a similarity between the role of the President in settling foreign disputes to the power of Congress in drafting the statutory framework through which bankruptcy disputes are settled. *Id.* at 246. Specifically, referencing the congressional acts in *Louisville Joint Stock Land Bank v. Radford* and *United States v. Security Industrial Bank,* the Federal Circuit declared that: "Of course, when the bankruptcy power is exercised in a wholly novel and unexpected manner, frustrating the legitimate expectations of creditors, it may amount to an unconstitutional taking." *Shanghai Power Co. v. United States,* 4 Cl. Ct. at 247. However, the Court further pointed out:

> In light of these important policy considerations, a creditor cannot argue that bankruptcy proceedings are unlawful because he could have collected more had he been permitted to pursue other remedies .... Nor will a creditor be allowed to claim a taking because the debt has been discharged even though the debtor may eventually be able to pay off the full amount.

*Id.* at 246–47 (citation omitted).

■ As explained above, the United States Supreme Court has concluded that an act of Congress that invalidates prior established

rights, such as liens or mortgages, could be considered novel or unexpected and, therefore, could constitute a taking for which just compensation must be provided. These cases, however, still do not provide support for plaintiffs' proposition that authorized, discretionary decisions issued by an authorized member of the judiciary can amount to a taking.

Plaintiffs offer an additional theory that because of defendant's failure to pay just compensation to the plaintiffs, the bankruptcy courts' decisions were "void" within the meaning of RCFC 60(b)(4). RCFC 60(b) provides: "On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order, or preceding for the following reasons: ... (4) the judgment is void." However, as the defendant points out, this court "lacks jurisdiction to entertain a Tucker Act claim under Rule 60(b) against the decisions of other courts." This trial court is not empowered to act as an appellate body with respect to the decisions of other courts. Plaintiffs' available course of relief was individually to seek review and appeal the decisions of the bankruptcy judges, which, according to the record, each of the plaintiffs, apparently, failed to do. Plaintiffs cannot circumvent the traditional review and appeals process simply by making a constitutional claim. The Supreme Court in *Celotex Corporation v. Edwards*, 514 U.S. 300, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995), outlined the correct, "orderly" way to appeal bankruptcy decisions: "If dissatisfied with the Bankruptcy Court's ultimate decision, respondents can appeal 'to the district court for the judicial district in which the bankruptcy judge is serving,' ... and then to the Court of Appeals for the ... Circuit." *Id.* at 313, 115 S.Ct. 1493 (quoting 28 U.S.C. § 158(a)); *see also* 28 U.S.C. § 158(d).

## CONCLUSION

While plaintiffs' claim may be creative, it is not supported by the procedures applicable to disputing decisions of federal bankruptcy court judges. Claims under the Fifth Amendment were not fashioned to function as an appellate process for bankruptcy court proceedings and cannot support a taking in the context suggested by the plaintiffs. The Court of Federal Claims does not have jurisdiction to review decisions issued during the normal course of bankruptcy proceedings. Relief from these judgments may be found in timely appeals to the appropriate federal district courts, Circuit Courts of Appeal and ultimately to apply for certiorari to the United States Supreme Court.

**IT IS SO ORDERED.**