Filed 8/23/10 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2010 ND 164

Susan Bala and RSI Holdings, Inc., 

a Delaware Corporation, Plaintiffs and Appellants

v.

State of North Dakota, Defendant and Appellee

No. 20090312

Appeal from the District Court of Cass County, East Central Judicial District, the Honorable Wade L. Webb, Judge.

AFFIRMED.

Opinion of the Court by Kapsner, Justice.

Bruce A. Schoenwald, P.O. Box 1287, Moorhead, Minn. 56561-1287, for plaintiffs and appellants.

Douglas Alan Bahr, Solicitor General, Office of Attorney General, 500 North 9th Street, Bismarck, N.D. 58501-4509, for defendant and appellee.

Bala v. State

No. 20090312

Kapsner, Justice.

[¶1] Susan Bala and RSI Holdings, Inc., appeal from a judgment dismissing their action for damages and declaratory relief based on the State’s alleged taking of their property without just compensation in violation of the state and federal constitutions.  We affirm, concluding the district court did not err in dismissing Bala and RSI’s complaint for failure to state a claim upon which relief can be granted.

I

[¶2] Bala is the sole shareholder and president of RSI Holdings, and RSI Holdings is the sole shareholder of Racing Services, Inc.  Bala is also the president of Racing Services, which in 1993 became the sole licensed provider of simulcast horse racing services to charitable parimutuel wagering sites in North Dakota.  In 2001, the Legislature authorized Racing Services to conduct parimutuel “account wagering,” which allowed bettors to establish accounts and place simulcast parimutuel wagers electronically from anywhere.  Racing Services established a separate call center in Fargo to handle the wagering accounts.

[¶3] In 2003, state and federal authorities began investigating RSI’s account wagering activities.  The State, through the North Dakota Racing Commission, determined nearly $9 million from approximately $99 million in account wagering bets was owed as excise taxes and brought a civil lawsuit against Bala and RSI to collect the taxes, and a receiver was appointed to manage RSI.  RSI paid almost $2 million of the taxes, and after Bala filed for bankruptcy on behalf of RSI, the State made a priority claim for the remainder of the excise taxes in the bankruptcy court.  State and federal criminal charges were also brought against Bala, RSI, and others involved.  After Bala was convicted of numerous federal law violations by a federal court jury, the state criminal proceedings were dismissed.  Bala’s federal court convictions were ultimately overturned based on insufficiency of the evidence.  
See
 
United States v. Bala
, 489 F.3d 334 (8th Cir. 2007).  However, Bala and RSI’s subsequent petition for a certificate of innocence, a prerequisite to seeking damages against the United States for wrongful imprisonment, was denied.  
See
 
United States v. Racing Services, Inc.
, 580 F.3d 710, 714 (8th Cir. 2009) (“RSI and Bala secretly collected and distributed $99,000,000 of parimutuel account wagers without paying one penny to charities, to the Racing Commission, or to the state treasurer, as North Dakota’s gambling laws required.”).

[¶4] In April 2009, Bala and RSI brought this action against the State, claiming the State took RSI’s property without just compensation in violation of the takings clauses of the state and federal constitutions. They alleged:

Plaintiffs’ valuable and protectable interests were completely taken by the Defendant without any compensation in violation of the Fifth and Fourteenth Amendments to the Constitution of the United States and Article I, Sections 3 and 16 of the Constitution of the State of North Dakota by the actions of the governmental entity Defendants in collecting various cash assets including $1,482,189.64 and $450,000 in unauthorized excise taxes, the April 28, 2003 raiding of RSI facilities and taking of its property, in the appointment of the receiver without sufficient legal justification who took over the operations of RSI after August 21, 2003, the commencement of criminal proceedings for acts which were not crimes forcing a diversion of assets and property to defend the ill-fated criminal charges, the forcing of RSI into Chapter 7 bankruptcy liquidation which resulted in the loss of all viability for the continuation of RSI as an entity and the take-over of all of its remaining assets, and the fact that the State of North Dakota continues to assert a specious claim for excise taxes in the alleged amount of $6,726,872.72.

They also claimed the excise taxes were “confiscatory” and sought a declaratory judgment that there was “no lawful basis” for “the excise taxes allegedly due from RSI.”

[¶5] The State moved to dismiss the complaint for failure to state a claim upon which relief can be granted under N.D.R.Civ.P. 12(b).  Bala and RSI sought summary judgment on their claim for declaratory relief.  The district court ruled the three-year statute of limitations in N.D.C.C. § 28-01-22.1 was applicable in this case and barred Bala and RSI’s inverse condemnation claim.  The court further ruled the complaint “fails to state a valid constitutional takings claim as a matter of law.”  The court denied Bala and RSI’s summary judgment motion because, based on its rulings, the motion was “moot.”

II

[¶6] The dispositive issue on appeal is whether the district court erred in ruling Bala and RSI’s complaint failed to state a valid constitutional takings claim as a matter of law.

[¶7] We review de novo a district court’s decision granting judgment on the pleadings under N.D.R.Civ.P. 12(b).  
Riverwood Commercial Park, L.L.C. v. Standard Oil Co., Inc.
, 2007 ND 36, ¶ 8, 729 N.W.2d 101.  “A district court should only grant a N.D.R.Civ.P. 12(b)(vi) motion ‘if it is disclosed with certainty the impossibility of proving a claim for which relief can be granted.’”  
Voigt v. State
, 2008 ND 236, ¶ 6, 759 N.W.2d 530 (quoting 
Williams v. State
, 405 N.W.2d 615, 620 (N.D. 1987)).  In reviewing the dismissal of a complaint under N.D.R.Civ.P. 12(b):

we recognize that a complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  The court’s inquiry is directed to whether or not the allegations constitute a statement of a claim under Rule 8(a), N.D.R.Civ.P., which sets forth the requirements for pleading a claim and calls for a short and plain statement of the claim showing that the pleader is entitled to relief.

The complaint is to be construed in the light most favorable to the plaintiff, and the allegations of the complaint are taken as true.

Tibert v. Minto Grain, LLC
, 2004 ND 133, ¶ 7, 682 N.W.2d 294 (quoting 
McCroskey v. Cass County
, 303 N.W.2d 330, 332 (N.D. 1981) (citation and quotations omitted)).

[¶8] The Fifth Amendment to the United States Constitution guarantees that private property shall not “be taken for public use, without just compensation.”  U.S. Const. Amend. V.  Article I, § 16 of the North Dakota Constitution likewise declares that “[p]rivate property shall not be taken or damaged for public use without just compensation having been first made to, or paid into court for the owner.”  “‘Inverse condemnation actions are a property owner’s remedy, exercised when a public entity has taken or damaged the owner’s property for a public use without the public entity’s having brought an eminent domain proceeding.’”  
Aasmundstad v. State
, 2008 ND 206, ¶ 15, 763 N.W.2d 748 (quoting 
Knutson v. City of Fargo
, 2006 ND 97, ¶ 9, 714 N.W.2d 44).  “To establish an inverse condemnation claim, a property owner must prove a public entity took or damaged the owner’s property for a public use and the public use was the proximate cause of the taking or damages.”  
Aasmundstad
, at ¶ 15.  “Whether there has been a taking of private property for public use is a question of law which is fully reviewable on appeal.”  
City of Minot v. Boger
, 2008 ND 7, ¶ 16, 744 N.W.2d 277.

[¶9] There is a distinction between the state’s police power and its power of eminent domain, which is “[c]lear in theory but often cloudy in application.”  
Eck v. City of Bismarck
, 283 N.W.2d 193, 198 (N.D. 1979) “Eminent domain takes property because it is useful to the public, while the police power regulates the use of, or impairs rights in, property to prevent detriment to the public interest, and constitutional provisions against taking private property for public use without just compensation impose no barrier to the proper exercise of the police power.”  29A C.J.S. 
Eminent Domain
 § 8, at 110 (2007); 
see also
 
Wilson v. City of Fargo
, 141 N.W.2d 727, 731 (N.D. 1965) (“in the exercise of the police power of the State, the protection of the health, safety, and morals of the people, uncompensated submission of property owners is exacted where such power is exercised to meet sudden emergencies”); 
Bennis v. Michigan
, 516 U.S. 442, 452 (1996) (“The government may not be required to compensate an owner for property which it has already lawfully acquired under the exercise of governmental authority other than the power of eminent domain.”); 
Eggleston v. Pierce County
, 64 P.3d 618, 623 (Wash. 2003) (“Eminent domain takes private property for a public use, while the police power regulates its use and enjoyment, or if it takes or damages it, it is not a taking or damaging for the public use, but to conserve the safety, morals, health and general welfare of the public.”  (internal quotations and emphasis omitted)).  Assuming for purposes of argument that the State “took” anything from Bala and RSI in this case, we conclude the State was exercising its police power rather than its eminent domain power.

[¶10] Bala and RSI appear to contend the Legislature improperly took their property through defective legislation which resulted in the Racing Commission’s refusal to renew RSI’s license.  However, gambling in North Dakota is a “highly regulated” industry.  
Meyer v. Hawkinson
, 2001 ND 78, ¶ 54, 626 N.W.2d 262 (Sandstrom, J., dissenting); 
see also
 N.D.C.C. chs. 53-06.1 and 53-06.2.  “The regulation of gambling lies at the ‘heart of the state’s police power,’” 
Gulfstream Park Racing Ass’n, Inc. v. Tampa Bay Downs, Inc.
, 399 F.3d 1276, 1278 (11th Cir. 2005) (quoting 
Johnson v. Collins Entm’t Co., Inc.
, 199 F.3d 710, 720 (4th Cir. 1999)), and “an interest which depends totally on regulatory licensing is not a property interest that is compensable under the Takings Clause.”  
Bobbie Preece Facility v. Commonwealth
, 71 S.W.3d 99, 104 (Ky. Ct. App. 2001); 
see also
 
Mitchell Arms, Inc. v. United States
, 7 F.3d 212, 216 (Fed. Cir. 1993); 
Mibbs, Inc. v. South Carolina Dep’t of Revenue
, 524 S.E.2d 626, 628 (S.C. 1999).  This allegation does not support a constitutional takings claim.

[¶11] Bala and RSI appear to argue the State’s investigation into the parimutuel gambling activities and its commencement of civil and criminal actions against them constituted a taking of their property without just compensation.  “The gathering and preserving of evidence is a police power function, necessary for the safety and general welfare of society,” 
Eggleston
, 64 P.3d at 623, and is not a “taking” for which the owner is entitled to compensation.  
See, e.g.
, 
Bennis
, 516 U.S. at 452; 
AmeriSource Corp. v. United States
, 525 F.3d 1149, 1153-54 (Fed. Cir. 2008); 
Acadia Tech., Inc. v. United States
, 458 F.3d 1327, 1331-32 (Fed. Cir. 2006); 
United States v. $7,990.00 in U.S. Currency
, 170 F.3d 843, 845-46 (8th Cir. 1999).  It follows that the State’s participation in any criminal or civil action resulting from its investigation was under its police power and any property “taken” was not for a public use within the meaning of the takings clause.  
See
 
Bennis
, at 452; 
Acadia Tech., Inc.
, at 1331.  This allegation likewise fails to state a viable claim for relief.

[¶12] Bala and RSI contend the State took its property by having a receiver appointed in the civil action.  However, the district court, rather than the State, appointed the receiver, and as in 
Allustiarte v. United States
, 46 Fed. Cl. 713, 718 (Fed. Cl. 2000), Bala and RSI have failed to provide any support for the “proposition that authorized, discretionary decisions issued by an authorized member of the judiciary can amount to a taking.”  This allegation does not support a takings claim.

[¶13] Bala and RSI appear to argue the excise taxes are “unauthorized” and the State’s acceptance of the taxes constitutes a “taking” of their property without just compensation.  In 
Ford Motor Co. v. State
, 59 N.D. 792, 796, 231 N.W. 883, 885 (1930), this Court held that “an action at law for the recovery of taxes illegally collected from a taxpayer and paid by him under protest is one arising upon contract” under the predecessor statute to N.D.C.C. § 31-12-02, which authorizes actions against the state.  Contract actions against the state are governed by the three-year statute of limitations in N.D.C.C. § 28-01-22.1, rather than the general six-year statute of limitations for an action upon a contract in N.D.C.C. § 28-01-16(1).  
See
 
Dimond v. State ex rel. State Bd. of Higher Educ.
, 2001 ND 208, ¶ 12, 637 N.W.2d 692.  Bala and RSI did not bring this action within three years of payment of the taxes, and consequently, any action seeking return of the “unauthorized” excise taxes is barred by N.D.C.C. § 28-01-22.1.

[¶14] Moreover, “[i]t is well established that [a government’s] general exercise of its taxing power does not violate the Fifth Amendment’s prohibition on takings without just compensation.”  
Quarty v. United States
, 170 F.3d 961, 969 (9th Cir. 1999); 
see also
 
County of Mobile v. Kimball
, 102 U.S. 691, 703 (1880).  “The imposition of a tax, even an invalid one, is generally considered not to constitute a Fifth Amendment taking.”  
Home Builders Ass’n v. West Des Moines
, 644 N.W.2d 339, 351 (Iowa 2002).  Although a few courts have entertained taking challenges if the tax is “confiscatory,” a tax is not confiscatory unless the plaintiff establishes “‘the tax was not reasonably related to a substantial public purpose.’”  
Id.
 (quoting 
Swisher Int’l, Inc. v. United States
, 178 F. Supp. 2d 1354, 1362 (Ct. Int’l Trade 2001)).  Bala and RSI do not suggest the excise tax is not reasonably related to a substantial public purpose.  This allegation also fails to state a viable claim for relief.

[¶15] We conclude Bala and RSI can prove no set of facts in support of their claim which would entitle them to relief.  The district court did not err in ruling Bala and RSI’s complaint fails to state a valid constitutional takings claim as a matter of law.

III

[¶16] In view of our disposition of this case, it is unnecessary to address the other issues raised.  The judgment is affirmed.

[¶17] Carol Ronning Kapsner

Mary Muehlen Maring

Dale V. Sandstrom

Bruce E. Bohlman, S.J.

Gerald W. VandeWalle, C.J.

[¶18] The Honorable Bruce E. Bohlman, S.J., sitting in place of Crothers, J., disqualified.