Carroll LADT, Individually and as President of Terrific and Amazing Corporation and Terrific and Amazing Corporation, Appellants,

v.

Joseph ARNOLD, Appellee.

Court of Appeals of Kentucky.

May 11, 1979.

Rehearing Denied July 13, 1979.

Charles W. Curry, R. Burl McCoy, Shuffett, Kenton, Curry & Karem, Lexington, for appellants.

Joseph L. Arnold, Nunn, Odear & Arnold, Lexington, for appellee.

Before COOPER, LESTER and WILHOIT, JJ.

LESTER, Judge.

Appellants sought to dispose of a liquor license, claiming ownership thereof, and they appeal from the issuance of a permanent mandatory injunction requiring them to convey any interest they may have in the permit to appellee. Under existing statutes, we are confronted with a case of first impression.

In 1972, appellee's wife, Norma Arnold, and her brother, Douglas Bradley, owned the premises known as 137 West Vine Street, Lexington, which had been remodeled for the purpose of leasing as a restaurant and cocktail lounge. Not having a liquor-by-the-drink license to accomplish the purpose, Joseph Arnold purchased such a permit from the estate of Henry C. Bryant, and by written agreement, the license was issued to a corporate tenant, Fig Tree, Inc. This lessee failed in the business so the permit covering the Vine Street premises was next transferred to Number One Water Street, Ltd. which also was a failure. The third tenant was Oliver's II, a limited partnership which met the same business fate as its predecessors. One of the parties to Oliver's II was appellant, Carroll Ladt, who was involved in Terrific and Amazing Corporation, which followed the partnership as tenant and operator of the restaurant and cafe operation.

Each occupant of the business property had a real estate lease and "Liquor Lease Agreement", and under the terms of the latter, each tenant recognized that, in spite of the fact that each of them was to apply for and obtain in their respective name an alcoholic beverage license, the appellee was the "true, lawful and 'in fact' owner of a Retail Liquor-By-The-Drink Liquor License (LD–449) privilege as is currently issued for the premises at 137 West Vine Street, Lexington, Kentucky, . . . ." Other pertinent portions of appellants' lease provided:

4. That First Party agrees to allow Second Party to make immediate application to the proper licensing authorities for transfer of the license to its name but all parties agree that same is for purpose of statutory compliance only and is of no evidence or consequence as to true ownership, which shall remain vested in the First Party. First Party agrees to execute any documents necessary to effect application with said licensing authorities.

5. That during times material herein, Second Party will bear the expense of applications and/or renewals thereof and shall hold First Party harmless therefrom.

6. That said Second Party will do nothing to jeopardize this "license privilege" and will at all times comply with all applicable statutes and ordinances to maintain same in "good standing".

7. That this Liquor License privilege may not be moved, sold or assigned without the prior written consent of the First Party.

8. That upon termination of the business operations of the Second Party at 137 West Vine Street, Lexington, Kentucky, Second Party agrees to execute all documents necessary to reconvey same to its true owner, First Party.

When Terrific and Amazing was unsuccessful in the business, it refused to comply with paragraph eight of the liquor lease and Arnold brought this action.

We should note that appellee never had the permit in his name nor did he have more than a potential dower interest in what appears to be one half of the restaurant premises. We further note that the agreement referred to above was drafted by appellants' attorney.

■ In the trial court, appellants' defense was that Arnold was in violation of KRS 243.660 in that his actions were an attempt to pledge or hypothecate a license in contravention of public policy. After defining those terms, the Fayette Circuit Court rejected the plea and in so doing, determined that at the time of the execution of the lease, the appellants admitted that Arnold was the true owner of the permit; that upon termination of the business they would reconvey the license; and that they offered no evidence of ownership or right to transfer it to a third party. Significantly, the court also found:

> The Court further does not attempt to determine the relationship between the plaintiff and the licensing agent of the state because that issue is not before the Court.

In other words, the Fayette Circuit Court limited the issues to the rights and liabilities as between the parties and refrained from reaching any conclusions as to appellee's standing with the Alcoholic Beverage Control Board. We assume the same posture.

■ It has long been the rule in this jurisdiction that a liquor license is but a temporary permit not involving a property right as between the issuing authority and the licensee, *Keller v. Kentucky Alcoholic Beverage Control Board,* 279 Ky. 272, 130 S.W.2d 821 (1939), but Kentucky Courts, without condemning the practice, have recognized that such licenses are bought and sold. *Lang v. Jones,* Ky., 433 S.W.2d 888 (1968). Moreover, to some extent, they are tacitly regarded as a terminable asset of an estate. KRS 243.640(1).

In this jurisdiction, we find no authority defining the relationship between one

claiming to "own" a license and a third party (excluding the state), so we must turn to the legal texts. At 45 Am.Jur.2d *Intoxicating Liquors* § 117 at p. 569, we observe that:

> It has been said that a liquor license is a legal interest in the nature of an economic asset, created and protected by statute, and, because it has monetary value and is transferable, it possesses the qualities of property.

and 48 C.J.S. *Intoxicating Liquors* § 109 a, at 227, 228 advises:

> Furthermore a liquor license or permit is not in itself property or a right of property, in the ordinary meaning of those terms, and there is no market value attributable to it. However, it may have aspects or the quality of property. It is of value to the holder, and usually has some money value, sometimes great money value.

Even where a statute has provided that no person shall be deemed to have a property right in any permit issued thereunder, one federal court has held that once the use or permit was granted, irrespective of what the legislature may declare about the permit itself, and except for the omnipresent and unlimited power of the state to revoke or modify the terms of the permit in the interest of the public welfare, the use of such permit, if not the permit itself, is property within the meaning of the due process clause of the Federal Constitution. *Midwest Beverage Co. v. Gates,* 61 F.Supp. 688 (N.D.Ind.1945). We mention the foregoing not so much to point out constitutional matters but rather for its value from the property aspect.

■ Appellee's property right is easily discernible, for he, his wife and her brother have a parcel of real estate remodeled, to the extent of some $80,000, for the purpose of leasing as a restaurant and cafe business. It goes without saying that a retail liquor-by-the-drink license is a basic essential to such an enterprise, and this being the case, Arnold has a valuable asset or property right in the permit. Through the medium of the lease agreement, he can assure himself that if one tenant fails in the business premises, he can guarantee the next lessee not only a place in which to conduct the operation, but also the requisite permits attendant thereon. As between one claiming ownership or a property right in a permit and third persons, excluding the issuing authority, we agree with the reasoning of the New Mexico and Pennsylvania courts that such a property right does exist. *Nelson v. Naranjo,* 74 N.M. 502, 395 P.2d 228 (1964); *State ex rel. Clinton Realty Co. v. Scarborough,* 78 N.M. 132, 429 P.2d 330 (1967); *Pennsylvania Liquor Control Board v. Leonardziak,* 210 Pa.Super. 511, 233 A.2d 606 (1967); *Redevelopment Authority of City of Philadelphia v. Lieberman,* 461 Pa. 208, 336 A.2d 249 (1975).

■ Having determined that appellee had a property right in the drink permit from the third party standpoint, we perceive no reason why it could not be the proper subject of a "lease agreement" even though such issues have not been brought to the attention of Kentucky courts. Nevertheless, the basic idea is not an unknown device:

> Assuming a valid assignment of a liquor license to the lessee of premises, it has been held that the lessor may enforce a lessee's covenant not to move the license from the leased premises, or to reassign to the lessor the license issued to the leased premises, upon the termination of the lease. Similarly, a covenant in a lease that upon transfer of a liquor license for the leased premises it should first be offered to the lessor, is enforceable, and binding upon the lessee holding over after expiration of the lease. 45 Am.Jur.2d *Intoxicating Liquors* § 180 at p. 613 citing Montana and Florida decisions.

The circuit court properly disposed of appellants' "pleading" or "hypothecating" a license argument raised under KRS 243.660, in that the statute had no application under the circumstances of this case.

The judgment is affirmed.

All concur.