PIGEONS' ROOST, INCORPORATED, Appellant,

v.

COMMONWEALTH of Kentucky and Division of Charitable Gaming in the Justice Cabinet, Appellees.

No. 1998–CA–00931–MR.

Court of Appeals of Kentucky.

May 21, 1999.

Discretionary Review Denied by Supreme Court Feb. 16, 2000.

Stanley A. Searcy, Jennings H. Kearby, Jeffersontown, KY, for Appellant.

Christopher M. Hill, Julie A. Cobble, Frankfort, KY, for Appellees.

Before BUCKINGHAM, COMBS, and McANULTY, Judges.

COMBS, Judge.

Pigeons' Roost, Inc., appeals from an order of the Franklin Circuit Court affirming the Justice Cabinet's revocation of its charitable gaming license following the appellant's violation of KRS 238.550(4). The appellant does not deny that it violated the provisions of KRS 238.550(4), but it maintains that the revocation of its license is unconstitutional. Having considered the arguments of counsel and applicable authority, we affirm.

The appellant, a non-profit corporation, applied for and was first issued a charitable gaming license in 1994. At issue in this case is the appellant's operation of bingo games and sale of "pull-tabs" under a license valid from April 1, 1996, to May 1, 1997.

During a standard review of the appellant's operations for the third and fourth quarters of 1996, the Justice Cabinet's Division of Charitable Gaming ("the Division") discovered that the charity had violated the provisions of KRS 238.550(4), the so-called "40% rule." At that time, KRS 238.550(4) required that licensees retain at least forty (40) percent of adjusted gross receipts for a rolling two-quarter period.[1] Based upon records supplied by Pigeons' Roost, the Division noticed that the charity had failed to retain the required 40% of adjusted gross receipts from charitable gaming operations. In fact, Pigeons' Roost had retained *no receipts* from its operations in the third and fourth quar-

ters. As a result, the Division filed an administrative complaint against the charity. Following an administrative hearing, a hearing officer issued a Recommended Order revoking the charitable gaming license. Subsequently, the Secretary of the Justice Cabinet issued a Final Order affirming the revocation.

Pigeons' Roost appealed to the Franklin Circuit Court. Following the submission of briefs and oral arguments, the trial court upheld the constitutionality of KRS 238.550(4) and affirmed the administrative revocation of the appellant's charitable gaming license. This appeal followed.

On appeal, Pigeons' Roost argues that the revocation of its license violated substantive due process rights under the Fourteenth Amendment to the United States Constitution and Sections 2 and 226 of the Kentucky Constitution. The appellant contends that the provisions of KRS 238.550(4) are arbitrary and unreasonable. It emphasizes that other statutes included in the Charitable Gaming Act sufficiently protect the Commonwealth and charitable gaming as intended by the General Assembly. We conclude that the statutory provision under attack in this case is not unconstitutional.

In response to a 1992 amendment of the Kentucky Constitution, the General Assembly passed the Charitable Gaming Act in 1994. The Act set forth a comprehensive scheme for the conduct, oversight, and regulation of charitable gaming. *See Commonwealth v. Louisville Atlantis Community*, Ky.App., 971 S.W.2d 810 (1997), *discretionary review denied*, 97–SC–1014 (June 10, 1998). As a part of the comprehensive scheme, KRS 238.550, entitled "Standards for management and accounting of funds—Quarterly reports," was enacted. As a result of amendments effective April 10, 1996, KRS 238.550(4) provided as follows:

---

1. Under the 1996 version of KRS 238.505(13), "adjusted gross receipts" means gross receipts less all cash prizes or the cash value of merchandise prizes.

At least forty percent (40%) of the adjusted gross receipts resulting from the conduct of charitable gaming during each two (2) consecutive calendar quarters shall be retained by the charitable organization and used exclusively for purposes consistent with the charitable, religious, educational, literary, civic, fraternal, or patriotic functions or objectives for which the licensed charitable organization received and maintains federal tax-exempt status.... No net receipts shall inure to the private benefit or financial gain any individual.[2]

 Section 2 of the Kentucky Constitution prohibits the arbitrary exercise of power by state government.[3] In order to pass constitutional muster, a statute must be rationally related to a legitimate state objective. *Lost Mountain Mining v. Fields,* Ky.App., 918 S.W.2d 232 (1996). The same standard applies for alleged due process violations of the Fourteenth Amendment to the United States Constitution. "Substantive due process requires that a statute have a rational relationship to a legitimate legislative goal." *Kentucky Div., Horsemen's Benevolent & Protective Ass'n. Inc. v. Turfway Park Racing Ass'n Inc.,,* 832 F.Supp. 1097, 1104 (E.D.Ky. 1993), *reversed on other grounds,* 20 F.3d 1406 (6th Cir.1994).

 As was noted in *Louisville Atlantis,*

[c]haritable gaming is an exception to the constitutional prohibition against lotteries and gift enterprises. Since the state may prohibit gambling entirely, it may clearly put limits on charitable gaming which may not be put on other legitimate enterprises. Keeping charitable gaming from becoming commercial, preventing participation by criminals, and preventing the diversion of funds from legitimate charitable purposes are all legitimate state objectives.

971 S.W.2d at 816.

We find no merit in the appellant's constitutional challenge to KRS 238.550(4). The Commonwealth has an express and legitimate interest in insuring that gaming receipts are used for solely charitable purposes and that they are not unwisely or improperly diverted. The requirement that a significant portion of adjusted gross gaming receipts be retained and accounted for by the charity is rationally related to this state objective. The requirement to retain 40% of adjusted gross receipts is not clearly unreasonable.

The appellant's contentions that the "40% rule" is "at war with good common sense"; that state interests are adequately safeguarded by other statutory provisions; and that the statutory requirement fails to provide for those operations which experience a downturn in gross receipts are not issues of judicial but of legislative concern. Again, we find that the statutory requirement is rationally related to the legitimate state interest of insuring that funds raised by charitable gaming actually benefit charitable works. As a result, we conclude that the challenged provision is, in fact, constitutional.

Based upon the foregoing, the judgment of the Franklin Circuit Court is affirmed.

ALL CONCUR.

---

**2.** In 1996, the original version of KRS 238.550(4) was renumbered as KRS 238.550(3), and the provisions of KRS 238.550(4) at issue here were added. The provisions of KRS 238.550(4) at issue here have not been included in the current version of the statute.

**3.** Section 2 provides that "[a]bsolute and arbitrary power over the lives, liberty and property of freemen exists nowhere in a republic, not even in the largest majority."