BOBBIE PREECE FACILITY,
Appellant,

v.

COMMONWEALTH of Kentucky, DE-
PARTMENT OF CHARITABLE
GAMING and Public Protection and
Regulation Cabinet, Appellee.

No. 2000–CA–001393–MR.

Court of Appeals of Kentucky.

April 27, 2001.

Discretionary Review Denied
April 17, 2002.

Mark A. Bubenzer, Daniel Dickerson, KY, Brief for Appellant.

Scott Jones, Pub. Protection and Regulation Cabinet, Frankfort, Brief for Appellee.

Before GUDGEL, Chief Judge; COMBS and KNOPF, Judges.

## OPINION

COMBS, Judge.

Bobbie Preece Facility appeals from the opinion and order of May 18, 2000, of the Franklin Circuit Court which affirmed the decision of the appellee, Commonwealth of Kentucky, Department of Charitable Gaming ("the Department"), to deny the facility's renewal application for a license to operate a charitable gaming establishment. Preece challenges the constitutionality of Kentucky Revised Statute (KRS) 238.530(3), as amended effective April 1, 1998, pursuant to which the Department denied its renewal application. Preece argues that its property has been taken without just compensation. After our review of the record, the arguments, and the legal authorities relied upon by Preece, we affirm.

The facts are undisputed and were largely stipulated to by the parties during the administrative proceeding conducted by the Department. Bobbie Preece Facility, a sole proprietorship owned by Bobbie Preece, includes a building in Catlettsburg, Kentucky, in which charitable gaming activities (bingo games) are conducted. Preece has owned the building since 1985. She is also the President and owner of at least 10% of Preece Wholesale, Inc., involving the distribution of gaming supplies and equipment—a business in which she and her husband have been involved for more than thirty years.

After the passage of the Charitable Gaming Act in 1994, Preece applied for and was issued a license by the Department to operate a charitable gaming facility. Preece Wholesale, Inc., also applied for and was granted a license to distribute charitable gaming supplies and equipment. Both licenses were renewed annually through February 1999. However, in 1998, the General Assembly amended KRS 238.530(3), a portion of the Charitable Gaming Act, effective April 1, 1998, to read as follows:

> No person who is licensed as a charitable organization, and no owner, officer, employee, or member of the immediate family of an owner, officer, or employee of a licensed charitable gaming facility shall be eligible for licensure as a distributor or manufacturer. No affiliate of an owner, officer, or employee, or member of the immediate family of an owner, officer, or employee of a licensed charitable gaming facility shall be licensed as a distributor or manufacturer.

In April 1998, the Department notified Preece of the change in the statute and informed her that when her facility and distributor licenses expired, she would not be eligible to have both of them renewed. Nevertheless, Preece sought renewal of both licenses. On January 29, 1999, she was notified that the renewal of her license to operate a charitable gaming facility (the first to expire) had been denied. The distributor license was renewed. At Preece's request, a hearing was conducted before a hearing officer, who determined that he was without authority to address Preece's argument that KRS 238.530(3), as amended, was unconstitutional. A final order of the Department was rendered affirming the denial of the facility license, and Preece appealed to the Franklin Circuit Court.

Preece argued that her rights pursuant to the Due Process Clause of the Four-

teenth Amendment of the United States Constitution had been violated by the non-renewal of her license. The court disagreed and upheld the constitutionality of KRS 238.530(3), discussing the statutory restrictions on holding multiple licenses as follows:

> This Court finds that the extended restrictions ... are rationally related to the legitimate state interest of preventing commercialization of charitable gaming ... [and] ... are necessary to avoid commingling of functions among licensees, and to prevent a handful of individuals from controlling the entire activity of charitable gaming.

Opinion of Judge Graham, p. 4. As to Preece's argument that the non-renewal constituted an unconstitutional taking of her property without just compensation, the Franklin Circuit Court concluded as follows:

> This Court cannot find that the interest Ms. Preece has in her charitable gaming licenses is one of entitlement that affords her the due process protection she seeks. Ms. Preece has no constitutional right to engage in charitable gaming. *See Commonwealth v. Louisville Atlantis Community/Adapt, Inc.*, 971 S.W.2d at 817. In fact, her right is solely created by statute, and is then heavily regulated. Accordingly, the [L]egislature may prohibit charitable gaming altogether, or it may place restrictions on licensing as it sees fit to create them. This Court find [sic] that an interest in a [charitable gaming] license is more akin to a privilege than to a property right. *See Ladt v. Arnold,* Ky.App., 583 S.W.2d 702 (1979). Therefore, we cannot agree that KRS 238.530(3) rises to the level of leaving property without beneficial use as that contemplated in *Lucas [v. South Carolina Coastal Council,* 505 U.S. 1003, 112 S.Ct. 2886, 120 L.Ed.2d 798

(1992)]. We find a distinct difference in rights and protection between the actual physical use of land, and the acquiring of a license to perform a specific function on the land, the latter requiring a lower level of protection. Accordingly, this Court finds that KRS 238.530(3) has not constituted a taking of Ms. Preece's property interests within the meaning of the Fifth Amendment's Takings Clause.

Opinion of Judge Graham, pp. 4–5.

In this appeal, Preece argues that the Franklin Circuit Court erred in failing to find a violation of her substantive due process rights as guaranteed by the Fourteenth Amendment to the United States Constitution by virtue of the application of the amended version of KRS 238.530(3) to deny her license. She contends that the statute forces her "to choose between the deprivation of two (2) property interests" and that it has resulted in the "taking" of her property. Preece observes that in a town the size of Catlettsburg, there are very few other uses for a bingo hall—and certainly none that "would provide as significant a source of revenue as a charitable gaming facility."

A party challenging governmental action as amounting to an unconstitutional taking bears a rather hefty burden.

> Our courts are sensitive to the presumption of constitutionality, i.e., the rule that an act should be held valid unless it clearly offends the limitations and prohibitions of the Constitution. The one who questions the validity of an act bears the burden to sustain such contention.

*Stephens v. State Farm Mutual Automobile Insurance Company,* Ky., 894 S.W.2d 624, 626 (1995). The alleged "violation of the Constitution must be clear, complete and unmistakable" in order to succeed on a claim that the law is unconstitutional. *Kentucky Industrial Utility Customers,*

*Inc. v. Kentucky Utilities Company,* Ky., 983 S.W.2d 493, 499 (1998). With respect to claims of substantive due process affecting "economic and business rights ... rather than fundamental rights," the statute at issue must be evaluated by the rational basis test—and the analysis is deferential in nature. *Stephens, supra* at 627; *see also Earthgrains v. Cranz,* Ky.App., 999 S.W.2d 218, 223 (1999).

■■■ Preece has no "fundamental right" to a license to operate a charitable gaming facility as noted in *Louisville Atlantis, supra,* at 817, where this Court stated: "[T]here is no constitutional right to engage in charitable gaming[.]" Additionally, Preece has failed to establish that the statute is either arbitrary or unreasonable so as to render it unconstitutional on its face. As was stressed repeatedly in *Louisville Atlantis, supra,* the Legislature has a legitimate objective of "[k]eeping charitable gaming from becoming commercial, preventing participation by criminals, and preventing the diversion of funds from legitimate charitable purposes[.]" *Id.* at 816. *See also,* KRS 238.500, and *Pigeons' Roost, Inc. v. Commonwealth, Division of Charitable Gaming,* Ky.App., 10 S.W.3d 133 (1999). By denying multiple licenses to an individual, KRS 238.530(3), as altered by the 1998 amendment, promotes the Legislature's goal of preventing the commercialization of charitable gaming, of preventing the concentration of profits in one individual, and of "insuring that funds raised by charitable gaming actually benefit charitable works." *Id.* at 135. We hold that the statute is rationally related to a legitimate state objective and thus that it does not violate Preece's substantive due process rights.

■■■ Preece vigorously argues in the alternative that even if a legitimate basis for the statute exists, the Department has taken her property without just compensa-

tion. The "Takings Clause" of the Fifth Amendment to the United States Constitution provides: "[N]or shall private property be taken for public use, without just compensation." Section 13 of the Kentucky Constitution mirrors that provision: "[N]or shall any man's property be taken or applied to public use without the consent of his representatives, and without just compensation being previously made to him." Preece correctly argues that the concept of "taking" has evolved over the years to include regulatory interference with one's use or enjoyment of his property in addition to the more traditional notion of a taking as a physical seizure of property.

> [W]hen the owner of real property has been called upon to sacrifice *all* economically beneficial uses in the name of the common good, that is, to leave his property economically idle, he has suffered a taking. *Lucas v. South Carolina Coastal Council,* 505 U.S. 1003, 1019, 112 S.Ct. 2886, 2895, 120 L.Ed.2d 798 (1992)(emphasis in original).

Preece argues that she has suffered the very type of regulatory taking described and denounced in *Lucas* and that the denial of a charitable gaming license essentially has resulted in a substantial loss in value of her real estate and the loss of income, amounting to a "taking without compensation."

■■■ We agree with the Franklin Circuit Court that the denial of Preece's license to operate a charitable gaming facility has not resulted in a "taking" as contemplated by *Lucas* or as encompassed within the meaning of either the United States or the Kentucky constitutions. There is no evidence that the real property owned by Preece has been diminished in value by the enforcement of the statute and the denial of the facility license. Preece has not argued that she

has been denied *all* beneficial uses of the property—only the most profitable one. However, lost profits are "not a proper element of compensation for land taking in condemnation proceedings." *Siding Sales, Inc. v. Warren County Water District*, Ky.App., 984 S.W.2d 490, 494 (1998).

■ Furthermore, it is significant that at the time Preece obtained the property in 1985, charitable gaming was not a legal enterprise in Kentucky. In order to be entitled to compensation under the Takings Clause of the Fifth Amendment, the owner must be deprived of a portion of the "bundle of rights" in the property *that existed when he obtained title to the property*. *Lucas*, 505 U.S. at 1027, 112 S.Ct. 2886.

■ Finally, we agree with the conclusion of the lower court that Preece does not have an enforceable property interest in the facility license that would support a claim under the Takings Clause of either constitution. As explained in *Mitchell Arms, Inc. v. United States*, 7 F.3d 212, 215–216 (Fed.Cir.1993), *cert. denied*, 511 U.S. 1106, 114 S.Ct. 2100, 128 L.Ed.2d 662 (1994), an interest which depends totally on regulatory licensing is not a property interest that is compensable under the Takings Clause.

> The chief and one of the most valuable characteristics of the bundle of rights commonly called "property" is "the right to sole and exclusive possession—the right to *exclude* strangers, or for that matter friends, but especially the Government." *Hendler v. United States*, 952 F.2d 1364, 1374 (Fed.Cir.1991) (citation omitted). In this case, Mitchell did not possess such a right.
>
> . . . .
>
> . . . "[E]nforceable rights sufficient to support a taking claim against the United States cannot arise in an area voluntarily entered into and one which, from the start, is subject to pervasive Government control." (citation omitted). The reason "enforceable rights sufficient to support a taking claim" cannot arise in such an area is that when a citizen voluntarily enters such an area, the citizen cannot be said to possess "the right to exclude." *Hendler*, 952 F.2d at 1374. And the reason the citizen cannot be said to possess "the right to exclude" is that the citizen is in an area subject to government control. Mitchell voluntarily entered the firearms import business, thereby knowingly placing itself in the governmentally controlled arena of firearms importation under the Gun Control Act . . . Under these circumstances, Mitchell's expectation of selling the assault rifles in the United States—which expectation necessarily flowed from the ATF permits—could not be said to be a property right protected under the Fifth Amendment.

As the Franklin Circuit Court correctly found, the subject of charitable gaming is highly regulated. Those who hold licenses must seek renewal annually or biennially. KRS 238.525. Preece first voluntarily entered the charitable gaming arena when it was an illegal activity. Since it was legitimized in 1994, charitable gaming has been subjected to strict governmental regulation. For these reasons, we agree with the Franklin Circuit Court that Preece's license is more akin to a privilege than a license. Preece could reasonably expect that the privilege could be taken away or encumbered as a means of meeting the legitimate goals of the Legislature. *Lucas, supra*, at 1027–1028, 112 S.Ct. 2886. In this vein, the United States Supreme Court aptly summarized that:

> in the case of personal property, by reason of the State's traditionally high degree of control over commercial dealings, [the owner] ought to be aware of the possibility that new regulation might even render his property economically worthless.

We conclude that the refusal of the Department to renew Preece's facility license guaranteed by the Fifth Amendment to the United States Constitution and by Section 13 of the Kentucky Constitution.

The judgment of the Franklin Circuit Court is affirmed.

ALL CONCUR.