**BINGO PALACE and Jamie Dizney, Movants,**

v.

**Henry G. LACKEY (Commissioner, Kentucky Department of Charitable Gaming), Respondent.**

No. 2009–SC–000079–I.

Supreme Court of Kentucky.

Aug. 27, 2009.

As Modified Oct. 29, 2009.

## OPINION AND ORDER

Before this Court is a request to review (pursuant to CR 65.09) a decision of the Court of Appeals, which denied interlocutory relief (pursuant to CR 65.07) from an interlocutory order of the Franklin Circuit Court denying a temporary injunction (pursuant to CR 65.04), which would allow Bingo Palace to continue operating while its appeal of a license nonrenewal was pending. Seeing no extraordinary cause for such relief, the request is denied.

Bingo Palace (Palace Concessions, LLC) is a for-profit enterprise located in Jefferson County, which has operated a licensed (FAC 0227) charitable gaming facility

since March of 2004. In October of 2008, Bingo Palace filed its annual renewal application. In November, the Department of Charitable Gaming (the "Department") sent Bingo Palace a notice of intent to seek a license revocation for alleged violations of three charitable gaming laws.[1] Bingo Palace filed a notice of appeal, and the matter sat. In December of 2008, the Department sent movants a notice that their renewal application was denied for the reasons given in the November notice. Before a revocation hearing was scheduled, the annual license expired.

The movants filed a complaint and a request for a temporary injunction in the Franklin Circuit Court to permit operation until the administrative appeal was over. The circuit court conducted a hearing on December 17, 2008, and, thereafter, denied the request. The circuit court, in denying the request, ruled that the decision to review a gaming license is discretionary with the respondents and that under *Maupin v. Stansbury*, 575 S.W.2d 695, 699 (Ky.App. 1978), the movants had not presented a substantial question or a substantial probability of success on the merits at trial.

Movants' request for interlocutory relief in the Court of Appeals to require the respondents to issue a temporary license pending the administrative appeal was denied. In affirming the trial court's denial, the Court of Appeals relied on *Bobbie Preece Facility v. Com., Dept. of Charitable Gaming*, 71 S.W.3d 99, 103 (Ky.App. 2001), for the proposition that there is "no 'fundamental right' to a license to operate a charitable gaming facility." *Id.* (*quoting Commonwealth v. Louisville Atlantis Community/Adapt, Inc.*, 971 S.W.2d 810, 817 (Ky.App.1997)). Therefore, the panel concluded that the issuance of a temporary

charitable gaming license was purely discretionary.

On appeal to this Court, movants contend the Court of Appeals erred in holding that the annual renewal of a charitable gaming facility license is a purely discretionary function. Movants argue that a renewal is a mandatory ministerial act by statute and regulation, citing 820 KAR 1:029, Section 1(5) and KRS 238.565(4). Hence, they maintain that a temporary license should have been issued pending review of the renewal denial.

▮▮▮ *Maupin*, 575 S.W.2d 695, provides the courts with guidance in dealing with interlocutory relief in the nature of a preliminary injunction. In *Maupin*, the Court of Appeals stated: "Because the injunction is an extraordinary remedy, sufficiency of the evidence below must be evaluated in light of both substantive and equitable principles." *Id.* at 697. CR 65.04 authorizes the granting of a temporary injunction (interlocutory relief) if the movant's rights are being violated and the movant will suffer immediate and irreparable injury pending a final judgment, or if waiting would render the final judgment meaningless. According to *Maupin*, "In order to show harm to his rights, a party must first allege possible abrogation of a concrete personal right." *Id.* at 698 (*citing Morrow v. City of Louisville*, 249 S.W.2d 721 (Ky.1952)). "[D]oubtful cases should await trial of the merits." *Id.* (*citing Oscar Ewing, Inc. v. Melton*, 309 S.W.2d 760 (Ky.1958)). And further, there must be "a clear showing that these rights will be immediately impaired." *Id.*

In evaluating an alleged "right" of the movants, we first look to the statutory scheme on "Charitable Gaming," KRS

---

1. The record before us does not reveal the nature of, or citation to, the gaming laws allegedly violated.

Chapter 238. KRS 238.525 authorizes the issuance of annual, biennial, and even temporary gaming licenses and renewals thereof. KRS 238.535(8)(d) allows charitable organizations to hold events off premises if the location is licensed. KRS 238.540 contains the restrictions on the location for charitable gaming, and KRS 238.555 controls the charitable gaming facility license. 820 KAR 1:029, Section 1(5) provides that when an application for a license or a renewal is submitted, the Office of Charitable Gaming "shall issue a license if the applicant has met the requirements for licensure . . . ." KRS 238.560 authorizes the Office of Charitable Gaming to police the gaming operations and facilities, and appeals of such administrative actions are governed by KRS 238.565. Section four of this appeal process provides for a stay of all administrative orders until the appeal is final. KRS 238.565(4).

 Movants contend that the licensing scheme, including renewals and appeal of denials, creates a mandatory ministerial act which is the equivalent of a "right" to a renewal. The respondents rely on *Bobbie Preece Facility*, 71 S.W.3d 99, which appears to be on point. In that case, a bingo hall owner also challenged the denial of a renewal application for a license to operate a charitable gaming establishment. In affirming the trial court's denial of said license, the Court of Appeals noted that the operator of the hall "has no 'fundamental right' to a license to operate a charitable gaming facility[.]" *Id.* at 103 (quoting *Louisville Atlantis*, 971 S.W.2d at 817). Also, the "license is more akin to a privi-

lege than a license." *Id.* at 104. While we agree the movants do not have a *property* right to a license,[2] we conclude that the movants do have a right to a renewal unless cause is shown that would have justified a revocation or nonrenewal of the license.[3]

 In the case sub judice, movants applied for a license renewal at about the same time as the Office of Charitable Gaming sought to revoke said license. Because the license expired before it could be revoked, there was no harm to the existing license. The renewal, however, was denied for the same unknown three reasons listed in the revocation notice. Therefore, movants were entitled to appeal the nonrenewal. Not knowing the reasons or evidence for the nonrenewal, we cannot determine whether the public interest would be harmed by the issuance of an injunction, whether a substantial question has been presented, or if irreparable injury was shown. *See Maupin,* 575 S.W.2d at 698–99. In denying the injunction, we are not ruling on the outcome of the appeal, but only instructing the parties to return to the administrative hearing below for a final judgment before appealing through the courts.

For the foregoing reasons, this Court affirms the Court of Appeals denial of interlocutory relief, albeit for different reasons.

All sitting. All concur.

Entered: AUGUST 27, 2009.

/s/ John D. Minton Jr.

---

**2.** The suit in *Bobbie Preece Facility* was for a "taking" without just compensation after the renewal was denied. *Id.* at 101. In the instant case, movants are seeking renewal of the license.

**3.** 820 KAR 1:029, Section 1(5) (requiring that the Department "shall issue a license (3) 27"

if conditions are met); 820 KAR 1:130, Section 4 (1)(d) (a license renewal application may be denied if "a license holder fails to fulfill any requirement, qualification or eligibility restriction for licensure set forth in KRS Chapter 238 or 820 KAR Chapter 1.")

Chief Justice