RENDERED:  MAY 29, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0758-MR

SIGNORE, LLC D/B/A DERBY LANE
MOBILE HOME COMMUNITY                                     APPELLANT


                    APPEAL FROM FRANKLIN CIRCUIT COURT
v.             HONORABLE THOMAS D. WINGATE, JUDGE
                    ACTION NO. 23-CI-01071


LOUISVILLE METRO
DEPARTMENT OF PUBLIC HEALTH
AND WELLNESS AND
COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND
FAMILY SERVICES                                          APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CALDWELL, COMBS, AND EASTON, JUDGES.

EASTON, JUDGE:  This is a judicial review of a Final Order of Appellee Cabinet

for Health and Family Services (Cabinet), which affirmed and adopted the

Recommended Order of Appellee Louisville Metro Department of Public Health

and Wellness (Department), revoking Appellant Derby Lane Mobile Home

Community's (Derby Lane) permit because of set back and spacing violations. After review of the record and applicable law, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

According to the parties' stipulation of facts, Derby Lane is a residential mobile home park community in Jefferson County. It has had several owners and operators since its inception in 1949. It was sold to Signore LLC in January 2018. Department conducted an inspection of Derby Lane in October 2018, resulting in a failing score. Orders were issued to correct sewage exposure at one of the units as well as to correct the entry to two other units, including Unit 19. After two follow up inspections, the issues were corrected.

A year later, the Department conducted another regular inspection that resulted in another failing score. The Department issued orders to correct various problems, including the removal of Unit 19 for failing to meet spacing requirements. Following these orders, the Department initiated an administrative conference with Derby Lane. This is the standard procedure after two failed inspections.

At the administrative conference, Derby Lane presented case law to support its argument about grandfathered usage with respect to the spacing requirements. The parties were not able to come to a resolution. The Department issued a written Notice of Enforcement stating the intent to suspend Derby Lane's

permit.  Derby Lane requested a conference, pursuant to 902 KAR[1] 1:400, challenging the Enforcement Notice before the Cabinet.

In December 2019, a conference was held.  Ciara Warren, an inspector with the Department, documented that the last inspection consisted of violations including water leaks, sewage exposure, accumulation of garbage, rubbish, or litter, skirting in disrepair, and several items holding water.  She explained that the score during the inspection was 82 and presented photos of various mobile homes and issues within the mobile home park.  Warren presented photos of Unit 19 showing it does not meet setback requirements and was larger than the previous mobile home placed there.  The photos illustrated that the unit on lot 19 was six feet away from its neighboring unit, and it continued to have sewage issues.

Mr. DelSignore with Derby Lane talked about significant sums of money spent on improvements, including renovations, blacktopping, pressure washing, and the removal of dead trees and abandoned homes.  Several residents had been removed for breaking the law and committing acts of violent behavior within the park.  Mr. DelSignore further said that each home was owned individually and that he only leased the lots.  Derby Lane did not dispute the Department's findings of violations regarding sewage exposure, water leaks, and

---

[1] Kentucky Administrative Regulations.

broken windows. The dispute between the parties concerned only the removal of Unit 19 because of the spacing concerns.

While Derby Lane acknowledges Unit 19 does not meet spacing requirements, it maintains the park is a non-conforming use that is "grandfathered in." Thus, despite Section 13(3) and (4) of 902 KAR 15.010, Derby Lane believes it is permitted to place homes according to 1949 law (which was basically none). This allows Derby Lane to place more homes than lots available and further allows the units to be located less than 15 feet apart. The Department argues that units must be 15 feet apart and at least 25 feet from the front property line and 15 feet away from any other property lines. Additionally, no greater number of units may be allowed than there are lots available.

After the conference concluded, the Administrative Hearing Officer submitted Cabinet Recommendations to the Department's Director. The Recommendations included the following: conduct a follow up inspection in 30 days; Derby Lane should substantially comply with 902 KAR 15:010 with a passing inspection score of 85 or higher and no critical violations, including the removal of Unit 19; if Derby Lane received a passing inspection score and removed Unit 19, it would be placed back on routine inspection; if Derby Lane received a score lower than 85, the recommendation was that its permit be suspended. The Department then modified the Recommendations by adding that

Unit 19 *must* be removed, or the permit would be suspended, and that any additional future mobile homes must be approved by the Department and added in accordance with the spacing requirements set forth in 902 KAR 15:010 and 815 KAR 25:090. Derby Lane timely challenged the Recommendations, but because no final action had been taken by the Department, the Cabinet's Hearing Officer determined the case was not ripe for an appeal.

The Department then performed a follow up inspection. Derby Lane received an even lower rating of 76 for the property's current condition. The Department found several violations for non-compliance, including the failure to remove Unit 19, as well as the addition of four new units without Department approval. The Inspection Report noted that Derby Lane is permitted for 60 lots, and there were 60 mobile homes placed, but the newly added units did not meet the setback requirements pursuant to 902 KAR 15:010. The Department then issued a Notice of Enforcement and suspended Derby Lane's permit effective immediately.[2] It was at this point the case became ripe for appeal.

---

[2] During oral argument, counsel informed the Court that Derby Lane is still operating regardless of the affirmed Final Order suspending its permit. We are disturbed to hear of what counsel described as ongoing "chaos" at this location. We find nothing in the record to explain this lack of enforcement. The circuit court was not asked to suspend the effect of its order, and there is no supersedeas or other process utilized to allow the court decision to be ignored. If the enforcement agencies were not serious about protecting the public by suspension of the permit, we are left to wonder why the matter persists.

On appeal before the Cabinet, the parties stipulated that the only issue in dispute was physical placement. Specifically, was Derby Lane required to place units at least 15 feet from any other building, structure or trailer, and no closer than 25 feet from the front property line, and 15 feet from any other property line? The Cabinet determined it was. The Cabinet Secretary adopted and incorporated by reference the findings of the Administrative Hearing Officer and affirmed the suspension of Derby Lane's permit in its Final Order.

The Cabinet considered the laws and regulations concerning mobile home communities and setback and spacing requirements dating back to 1954. These regulations contained no "grandfather clause." As a result, the Cabinet determined that all mobile home communities are required to follow the regulations. In addition, the Cabinet considered the current regulations and found that they *do* contain a grandfather clause, which allows mobile home communities to continue operating when they do not meet some requirements, but only if two conditions are met: (1) the community can be maintained in a safe and sanitary manner, and (2) it does not present a public health nuisance. The Cabinet further found that, under the current regulations, if a mobile home is removed it must be replaced by a home of the same size or otherwise preserve the setback and spacing requirements in effect.

The Cabinet determined the current grandfather clause did not allow for unfettered operation, and that a community grandfathered in by the current regulation must still be deemed capable of being maintained in a safe and sanitary manner. The Department deemed the set back and spacing at Derby Lane was unsafe.

The Cabinet affirmed the Department's suspension of Derby Lane's mobile home community permit. The Cabinet confirmed that, under both the current and the 1954 regulations, Derby Lane was required to comply with the spacing requirements as they have existed since 1954. Derby Lane then sought judicial review on grounds that the Final Order was not supported by any evidence, failed to apply the correct applicable law, and violated Derby Lane's constitutional rights.

The parties filed Motions for Summary Judgment for which the trial court heard oral argument. The trial court granted the motions in favor of both the Department and the Cabinet, thereby affirming the Final Order. The trial court rejected each of Derby Lane's challenges. This appeal followed. All issues have been properly preserved and the briefs are compliant with the Rules of Appellate Procedure.

## STANDARD OF REVIEW

"As an appellate court, we stand in the shoes of the circuit court and review the [agency's] decision for arbitrariness." *Martin County Home Health Care v. Cabinet for Health and Family Servs.*, 214 S.W.3d 324, 326 (Ky. App. 2007) (citations omitted). "The three-part test for determining the arbitrariness of an administrative agency decision concerns whether the agency's action was within the scope of its granted powers, whether the agency provided procedural due process, and whether the decision was supported by substantial evidence . . . . If the decision of the administrative agency fails to meet any of these standards, it must be considered to be arbitrary." *Allen v. Kentucky Horse Racing Authority*, 136 S.W.3d 54, 59 (Ky. App. 2004) (internal quotation marks and citations omitted).

> If the findings of fact of an administrative agency are supported by substantial evidence of probative value, then they are binding on the reviewing court. The agency's findings must be upheld if based on substantial evidence even though there exists evidence to the contrary in the record. Substantial evidence is defined as evidence of substance and relevant consequence having the fitness to induce conviction in the minds of reasonable [persons]. If the administrative agency decision was not supported by substantial evidence, then it was arbitrary or clearly erroneous. If there was substantial evidence to support the agency's decision, it cannot be said to be arbitrary. Furthermore, an [agency] is given great latitude in evaluating the evidence and the credibility of the witnesses appearing before it.

*Id.*

The interpretation and construction of statutes and regulations are questions of law that this Court reviews *de novo. Steel Creations By and Through KESA, The Ky. Workers' Comp. Fund v. Injured Workers Pharmacy*, 532 S.W.3d 145, 153 (Ky. 2017) (citing *Saint Joseph Hosp. v. Frye*, 415 S.W.3d 631, 632 (Ky. 2013)).

## ANALYSIS

Derby Lane raises the following issues on appeal: the trial court gave too much deference to agency conclusions; the trial court incorrectly applied the law; the Final Order was arbitrary and not supported by substantial evidence; and the actions of the Department and the Cabinet constituted an unconstitutional "taking" under the 5th and 14th Amendments of the United States Constitution as well as under the Kentucky Constitution. We reject each of these arguments.

As a preliminary matter, Derby Lane states that its challenge of the trial court's deference to agency interpretations was preserved in the record in its Counter Motion for Summary Judgment and Response in Opposition to the Motions for Summary Judgment. The Cabinet responds that this document fails to mention the trial court's application of the rule that agencies are entitled to deference in interpreting their own statutes and regulations. Thus, the Cabinet contends there is no basis for this Court to review the appropriateness of the trial court's use of the deference standard.

A review of Derby Lane's Memorandum in Opposition to Appellees' Motions for Summary Judgment reveals references to Kentucky case law requiring courts to review agency interpretation and construction of statutes and regulations *de novo*.[3]  In addition, the deference issue was raised by the Department and discussed by the parties at oral argument[4] before the trial court.  This issue was properly preserved.

## I.) Standard of Review for Agency Decisions Interpreting Statutes and Regulations

At least until recently, appellate courts deferred "to an administrative agency's interpretation of the statutes and regulations it is charged with implementing."  *Huxol v. Daviess Cnty. Fiscal Court*, 507 S.W.3d 574, 578 (Ky. App. 2016).  Such deference, often referred to as the *Chevron* doctrine, derived from the United States Supreme Court decision in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984).

The *Chevron* doctrine is a federal doctrine.  From a federal constitutional perspective, *Chevron* held that there was nothing unconstitutional in a process that gives deference to an executive branch agency decision.  But that does not mean the states either must or cannot adopt such a policy.  Kentucky did

---

[3] Trial Record (TR) at 127.

[4] Franklin Circuit Court motion hearing, March 03, 2025, Video Record (VR) at 10:00:05-10:00:56.

adopt such a policy. The Kentucky Supreme Court has stated that when it is in the "form of an adopted regulation or formal adjudication," Kentucky courts "review an agency's interpretation of a statute it is charged with implementing" under the *Chevron* doctrine. *Metzinger v. Kentucky Retirement Systems*, 299 S.W.3d 541, 545 (Ky. 2009) (citation omitted).

Nearly 40 years after *Chevron* was decided, the United States Supreme Court overruled it in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024). While the *Chevron* deference doctrine is no longer recognized on the federal level, the Kentucky Supreme Court has yet to determine if courts in the Commonwealth will reject *Chevron* deference as a matter of state law.

Recently, the Kentucky General Assembly determined that courts cannot follow *Chevron*. Immediately following the trial court's May 2025 decision in this case, the legislature statutorily eliminated the *Chevron* deference policy by passage of Senate Bill 84. 2025 Ky. Acts Ch. 112 (SB 84) (eff. Jun. 27, 2025) ("An Act relating to judicial review of state agency action."). The codification of this Bill is contained in KRS[5] 13A.247, which provides:

> Interpretation of law by administrative body not entitled deference from reviewing court[.]
>
> (1) An administrative body shall not interpret a statute or administrative regulation with the expectation that the

---

[5] Kentucky Revised Statutes.

interpretation of the administrative body is entitled to deference from a reviewing court.

(2) The interpretation of a statute or administrative regulation by an administrative body shall not be entitled to deference from a reviewing court.

Against this backdrop of recent changes in the law, Derby Lane challenges the trial court's deference to the Cabinet and the Department's interpretation of its own statutes and regulations. Derby Lane argues that such deference is now inconsistent with Kentucky law.

We need not express an ultimate opinion on whether Kentucky courts should continue to permit *Chevron* deference. This appeal concerns administrative agency review. Aside from the courts' responsibility to review any arbitrary governmental action under Section 2 of the Kentucky Constitution, the legislative branch can provide what means are available for judicial review of administrative decisions. It may be an open question as to what degree the legislature has the constitutional authority to tell the courts how to review its cases, even though only the legislature can provide a means for judicial review of administrative decisions. We leave those questions for another day and another case. If there was any error in the circuit court's giving of deference to the agency interpretation, it was harmless as we will review the matter *de novo*.

Our review is first subject to the existing legislative parameters of KRS Chapter 13B. KRS 13B.150(2) provides the framework within which courts

review administrative decisions of the executive branch of government. This section provides that, when reviewing an administrative agency's decision, the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may only reverse an agency's final order if it finds the order is:

> (a) In violation of constitutional or statutory provisions;
>
> (b) In excess of the statutory authority of the agency;
>
> (c) Without support of substantial evidence on the whole record;
>
> (d) Arbitrary, capricious, or characterized by abuse of discretion;
>
> (e) Based on an ex parte communication which substantially prejudiced the rights of any party and likely affected the outcome of the hearing;
>
> (f) Prejudiced by a failure of the person conducting a proceeding to be disqualified pursuant to KRS 13B.040(2); or
>
> (g) Deficient as otherwise provided by law.
>
> This court in *Aubrey v. Office of Attorney General*, 994 S.W.2d 516

(Ky. App. 1998), outlined the standard of review for administrative agency decisions.

> Where the legislature has designated an administrative agency to carry out a legislative policy by the exercise of discretionary judgment in a specialized field, the courts do not have the authority to review the agency decisions

-13-

> *de novo.* Judicial review of the administrative action is confined to a determination of whether the action taken was arbitrary. So long as the agency's decision is supported by substantial evidence of probative value, it is not arbitrary and must be accepted as binding by the appellate court. Substantial evidence is defined as evidence of substance and relevant consequence, having the fitness to induce conviction in the minds of reasonable persons. In its role as a finder of fact, an administrative agency is afforded great latitude in its evaluation of the evidence heard and the credibility of witnesses, including its findings and conclusions of fact. However, this Court is authorized to review issues of law on a *de novo* basis.

*Id.* at 518-19 (citations omitted).

KRS Chapter 13B contains no provision about deference to agency legal interpretation. Accordingly, we will determine whether the Final Order in this case was arbitrary or unsupported by substantial evidence. Following the process authorized in KRS Chapter 13B and in light of any recent uncertainty in the law as to deference, we will undertake a *de novo* review of any issues raised regarding the Cabinet's interpretation of the relevant statutes and regulations.

### II.) The 1954 Trailer Park Statutes and Regulations

The earliest statutes and regulations relating to mobile homes were adopted in 1954 as part of KRS Chapter 219: Hotel, Restaurant and Trailer Park

-14-

Regulations (1954 Act). They are contained in KRS 219.120 to KRS 219.250 and are titled "Trailer Parks."[6]

Pursuant to KRS 219.130, "[n]o one shall operate a trailer coach park without having first obtained a permit" from the State Department of Health as provided for in the Act. Permit applications were required to conform with department requirements, which may include standards, rules, and regulations. The State Board of Health (Board) was empowered to establish standards and requirements for mobile home communities and to promulgate regulations and rules addressing them. Permits all expired on a yearly basis and were subject to annual renewal.

KRS 219.140(2) concerns issuance of permits and states:

Any one operating a trailer coach park which is in operation on July 1, 1954, shall be issued a permit to operate, provided that, by January 1, 1955, the trailer coach park shall comply with all requirements of sanitation established under KRS 219.120 to 219.250 including the rules and regulations adopted therefor. However, failure to comply with the required standards within the six months period, shall result in the institution of an action for revocation or suspension of the permit.

---

[6] Administrative Record (AR), Appellee's Brief, Exhibit 2.

The Board promulgated regulations governing location and layout of trailers in a regulation referred to as SAN-1.[7] This regulation provides in pertinent part:

> 2. <u>Location and Layout</u>. Lots for each trailer coach shall be indicated with corner markers and shall not be less than 1000 square feet. No building, structure, or trailer shall be erected or parked in any trailer park or be located closer than 15 feet from any other building, structure or trailer and in no case closer than 25 feet from the front property line and 15 feet from any other property. No greater number of trailers shall be allowed than there are trailer coach spaces available therefor.

**A.) <u>The 1954 Act does not contain a "Grandfather Clause"</u>**

Derby Lane argues that the express language of the 1954 Act required mobile home communities in operation on July 1, 1954, to comply with sanitation laws to obtain its permit. Conversely, Derby Lane insists that mobile home communities in operation *prior to July 1, 1954*, were not required to so comply to obtain its permit. Derby Lane was therefore excepted from this permit requirement via a "grandfather clause." We disagree.

A "grandfather clause" is "a provision that creates an exemption from the law's effect for something that existed before the law's effective date; specif., a statutory or regulatory clause that exempts a class of persons or transactions

---

[7] AR, Brief in Support of Derby Lane Mobile Home Community, Appendix 2.

-16-

because of circumstances existing before the new rule or regulation takes effect." BLACK'S LAW DICTIONARY (12th Ed. 2024).

The purpose of a "grandfather clause" in initial regulatory legislation is to satisfy the dictates of fairness by affording relief to previously established enterprises. *Commonwealth Air Transport v. Stuart*, 196 S.W.2d 866, 869 (Ky. 1946). In varying degrees, such clauses exempt from regulation those individuals and enterprises operating in an area prior to its regulation, and who have acquired rights which would be adversely effected by the legislation. "Grandfather clauses" are purposeful legislative concessions to those pioneers or established entities in an area which have actively sought the regulatory legislation. *Kentucky Bd. For Licensing Hearing Aid Dealers v. Rallo*, 549 S.W.2d 825, 827-28 (Ky. 1977).

But the express language of the 1954 Act contains no language whatsoever that exempts mobile home communities in operation *prior* to July 1, 1954, from the newly established permit requirements. Absent such legislative expression, there is no "grandfather clause."

Derby Lane argues that, while the regulations adopted in KRS Chapter 219 regarding water supply, garbage, sewage and waste disposal relate to "requirements of sanitation," provisions relating to mobile home location and layout (set back and spacing requirements) do not. Derby Lane insists that set back and spacing requirements are *unrelated* to the "requirements of sanitation"

-17-

referenced in the Act.  So, Derby Lane thinks it was grandfathered in under the 1954 Act without regard to the set back or spacing provisions, provided Derby Lane complies with the "requirements of sanitation."

The fact that Derby Lane has continuously operated from July 1, 1954, through the present indicates that it has previously followed all such requirements sufficiently for seventy years.  Still, Derby Lane challenges the fact that neither the Administrative Hearing Officer, the Cabinet, nor the trial court attempted to analyze the application of "requirements of sanitation" referenced in KRS 219.140(2).  But such an academic debate and detailed analysis about this is unnecessary considering the clear and unequivocal language of the applicable regulation, SAN-1, which regulates the layout and location of mobile home units.

KRS 219.140(2) requires mobile home communities to comply not only with "requirements of sanitation" but also with "rules and regulations adopted therefor."  SAN-1 is a regulation adopted by the Board as part of the Act and clearly forbids the set back and spacing of units observed at Derby Lane by the Department inspector.  It is not difficult to see the connection between spacing and sanitation regulation.  Larger homes with the capacity for more people closer together logically will present more refuse and other sanitation concerns.

We independently agree with the reasoning of the Cabinet that it is nonsensical for the Department to turn a blind eye to a mobile home community

and allow it to operate *carte blanche* with essentially no regard for safety and sanitation at all. The requirements specified in the 1954 Act and regulations promulgated thereto represent the bare minimum of compliance standards for Derby Lane, and there is no express legislative exemption relieving Derby Lane from such compliance.

### B.) Current regulations also prohibit the location of Unit 19 and other replacement units

Even if a "grandfather clause" existed which excused Derby Lane's compliance with the 1954 Act and SAN-1, current regulations prohibit the spacing and set back locations of Unit 19 and the four additional units added to the community while this case was pending.

The unit located at lot 19 is not the original unit. It is a replacement unit, larger in size than the original, and located only six feet from its neighboring unit. Derby Lane has also added four additional units, which were discovered by the Department at its April 2022 inspection. Unit 19 and the additional replacement units do not meet spacing and set back provisions governed by 902 KAR 15:010, Section 13(3) and (4). This section provides as follows:

> (3) A manufactured or mobile home community with a valid operating permit, constructed on or before January 1, 1956, shall be eligible for a permit to continue operation if:

(a) The community does not meet the design and construction requirements of this administrative regulation; but

(b)

1. Community facilities are capable of being maintained in a safe and sanitary manner, in compliance with this administrative regulation; and

2. The community does not present a public health nuisance.

(4) A manufactured or mobile home currently in place at a community shall be allowed to continue to be situated on that lot. If the home is removed, it shall be replaced only by a home:

(a) The same size as the home being removed; or

(b) That preserves the set back and spacing requirements in effect at the time the community was constructed. A setback from an interior street shall be the maximum achievable for the replacement home.

First, the grandfather clause relates specifically under Subsection (3) governing generally "design and construction requirements." But Subsection (4) specifically mandates the spacing limitations. Under this regulation, a replacement mobile home unit must either be the same size as the pre-existing mobile home *or* preserve the set back and spacing requirements. This applies to the replaced mobile home unit located at lot 19 and the four additional replacement units. Again, there is no

grandfather clause to totally excuse spacing regulations regardless of when the park was "constructed."

Derby Lane must also be maintained in a safe and sanitary manner and not represent a public health nuisance. The Department deems as unsafe the set back and spacing of these replacement units, citing as an example the possibility of fire spreading to units located only six feet apart. Derby Lane challenges the Department's submission of a photograph of such a fire, although admittedly it is not a photograph of a mobile home located at Derby Lane.

Derby Lane challenges the authenticity of this photograph, submitted to the Administrative Hearing Officer in the Department's Reply Brief, and argues that the Cabinet improperly relied on this "evidence" in determining the spacing of Unit 19 created an unsafe condition. But it does not take an expert or even specific evidence to understand that, if mobile homes are placed too close together, then this spacing can contribute to the spread of a fire in the community. This is not an evidentiary issue. It is an illustration of a common sense logical approach to what could go wrong. And common sense must not be a stranger in the house of the law. *Cantrell v. Kentucky Unemployment Ins. Commission*, 450 S.W.2d 235, 237 (Ky. 1970).

### III.) **The Cabinet's decision was not arbitrary nor unsupported by substantial evidence**

Derby Lane challenges the Cabinet's decision as arbitrary, arguing that other violations referenced in the Final Order are irrelevant because this case only concerns set back issues; the Cabinet never made a finding that the spacing and set back requirements contained in KRS 219.140(2) were a part of the "requirements of sanitation" referenced in the statute, and there was no explanation how Derby Lane's failure to comply with these set back requirements was "unsanitary." Derby Lane also challenges the Administrative Hearing Officer's reliance on improper evidence submitted by the Department that Derby Lane's failure to comply with set back and spacing provisions created an unsafe condition due to the possibility of a fire spreading. We disagree. The Cabinet's Final Order was not arbitrary; it was supported by substantial evidence.

### A.) **The Department's action in suspending Derby Lane's permit was within the scope of powers granted by KRS 219.380(2)**

The Cabinet is charged with administering the statutes which govern mobile home communities: KRS 219.310 to 219.410. The Cabinet does so through a local health department. Pursuant to KRS 219.380(2), the Department, after notice and an opportunity to be heard, is authorized to deny, suspend, or revoke a permit in any case where it finds that there has been a failure to comply with the statutes, *or the administrative regulations promulgated by the secretary.*

-22-

SAN-1 is one such regulation promulgated by the secretary, which took effect in 1954 and was amended in 1955.  This regulation specified location and set back restrictions for mobile home communities already in operation, and for those mobile home communities that began operation after 1954.  These regulations require that units in mobile home communities be spaced 15 feet from any other building, structure or trailer, and no closer than 25 feet from the front property line, and 15 feet from any other property line.  There is no dispute that Derby Lane has failed to meet these spacing requirements.

In addition, Derby Lane is also subject to location and set back restrictions for replacement units as prescribed by 902 KAR 15:010, Section 13(3) and (4).  There is no dispute that Derby Lane has failed to comply with these set back provisions for replacement units.  As a result, the Department had the express authority to suspend Derby Lane's permit under KRS 219.380(2).

**B.) <u>Derby Lane was afforded due process</u>**

Derby Lane was afforded procedural due process in accordance with KRS Chapter 13B, by participating in the Department's administrative hearing process (KRS 13B.050), mediation and prehearing conference (KRS 13B.070), the Cabinet's administrative hearing (KRS 13B.080), and by judicial review of the Final Order (KRS 13B.140).

The facts of this case are not in dispute. They were stipulated. Derby Lane has failed to comply with the applicable set back and spacing requirements of both the 1954 Act and 902 KAR 15:010. There is no legal authority to support Derby Lane's position that mobile home communities with a valid permit before 1954 do not have to follow *any* rules or regulations. Indeed, such a finding in this case would lead to an absurd result. And, as correctly cited by the Franklin Circuit Court, Kentucky courts avoid interpretations of laws that produce an absurd result. *See, e.g.*, *Commonwealth v. Reynolds*, 136 S.W.3d 442, 445 (Ky. 2004).

Derby Lane's argument that the trial court improperly deferred to the Department and the Cabinet's interpretation of the relevant statutes and regulations has been rendered moot. Under our *de novo* review, we reach the same conclusion as the trial court and any possible error by the trial court's deference is harmless.

### IV.) **There was no unconstitutional taking**

Derby Lane argues that the suspension of its mobile home community permit, due to the application of set back and spacing requirements, amounts to an unconstitutional regulatory taking. Derby Lane says that when Signore LLC acquired Derby Lane in 2018, this acquisition included Signore LLC's investment-backed expectations of continued operation, supported by significant sums of money spent on improvements. Derby Lane believes that the actions of the Department in suspending Derby Lane's permit to operate imposes a significant

-24-

and devastating effect on the economics of Signore LLC's ownership, and further damages the community through the elimination of living opportunities for lower income individuals within Jefferson County.

The trial court found the permit suspension was appropriate and further held that Derby Lane does not hold enforceable rights sufficient to support a taking claim because it voluntarily chose to enter an area subject to governmental control. We agree.

The "Takings Clause" of the 5th Amendment to the United States Constitution, made applicable to the States through the 14th Amendment, provides:

> [N]or shall private property be taken for public use, without just compensation.

Section 13 of the Kentucky Constitution mirrors that provision:

> [N]or shall any man's property be taken or applied to public use without the consent of his representatives, and without just compensation being previously made to him.

A party challenging governmental action as amounting to an unconstitutional taking bears a rather hefty burden. *Bobbie Preece Facility v. Commonwealth, Dep't of Charitable Gaming*, 71 S.W.3d 99 (Ky. App. 2001). As this Court explained in *Preece*, an interest which depends totally on regulatory licensing is not a property interest that is compensable under the Takings Clause. *Id*. at 104.

As explained in *Mitchell Arms, Inc. v. United States*, 7 F.3d 212 (Fed. Cir. 1993), *cert. denied*, 511 U.S. 1106, 114 S. Ct. 2100, 128 L. Ed. 2d 662 (1994), an interest which depends totally on regulatory licensing is not a property interest that is compensable under the Takings Clause.

The chief and one of the most valuable characteristics of the bundle of rights commonly called "property" is "the right to sole and exclusive possession—the right to *exclude* strangers, or for that matter friends, but especially the Government," *Hendler v. United States*, 952 F.2d 1364, 1374 (Fed. Cir. 1991) (citation omitted).

[E]nforceable rights sufficient to support a taking claim against the United States cannot arise in an area voluntarily entered into and one which, from the start, is subject to pervasive Government control. . . . The reason "enforceable rights sufficient to support a taking claim" cannot arise in such an area is that when a citizen voluntarily enters such an area, the citizen cannot be said to possess "the right to *exclude*. *Hendler*, 952 F.2d at 1374. And the reason the citizen cannot be said to possess "the right to exclude" is that the citizen is in an area subject to government control.

*Id.*

Mobile home communities are highly regulated. The government not only promulgates laws governing health and safety concerns in mobile home communities, but it also has the right to physically enter and inspect the property. Derby Lane does not possess the right to exclude the government from entering the Derby Lane mobile home community. Suspension of an operating permit for failure to comply with laws governing the operation of mobile home communities

-26-

simply does not trigger the right to compensation guaranteed by the Takings Clause of the 5th Amendment of the United States Constitution, or by Section 13 of the Kentucky Constitution.

In addition, Derby Lane's investment-backed reliance on a mobile home community permit does not constitute "property" within the meaning of the Takings Clause of either the United States or Kentucky Constitutions. Lost profits are "not a proper element of compensation for land taking in condemnation proceedings." *Siding Sales, Inc. v. Warren County Water District*, 984 S.W.2d 490, 494 (Ky. App. 1998).

## CONCLUSION

Finding no error in the administrative decision revoking Appellant Derby Lane's mobile home community permit for violations of set back and spacing requirements under the trailer park statutes and regulations in effect since 1954, and current regulations under 902 KAR 15:010; and finding no unconstitutional taking under the 5th Amendment to the United States Constitution or Section 13 of the Kentucky Constitution, the Order of the Franklin Circuit Court affirming the Final Order of Appellee Cabinet for Health and Family Services is AFFIRMED.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Donald L. Cox
William H. Mooney
Louisville, Kentucky

ORAL ARGUMENT FOR
APPELLANT:

Mathew Cox
Louisville, Kentucky

BRIEF AND ORAL ARGUMENT
FOR APPELLEE CABINET:

Jamhal Woolridge
Frankfort, Kentucky


BRIEF AND ORAL ARGUMENT
FOR APPELLEE DEPARTMENT:

Natalie Johnson
Louisville, Kentucky