RENDERED: AUGUST 24, 2017
TO BE PUBLISHED

# Supreme Court of Kentucky

## 2016-SC-000217-WC

STEEL CREATIONS BY AND THROUGH                    APPELLANTS
KESA, THE KENTUCKY WORKERS'
COMPENSATION FUND; PRESTON
HIGHWAY METERED CONCRETE, BY AND
THROUGH KESA, THE KENTUCKY
WORKERS' COMPENSATION FUND;
MURRAY ELECTRONICS, BY AND
THROUGH KESA, THE KENTUCKY
WORKERS COMPENSATION FUND; FAMILY
ALLERGY AND ASTHMA, BY AND
THROUGH KESA, THE KENTUCKY
WORKERS' COMPENSATION FUND; AND
SAMARITAN ALLIANCE, BY AND THROUGH
KESA, THE KENTUCKY WORKERS'
COMPENSATION FUND


ON APPEAL FROM COURT OF APPEALS
CASE NOS. 2015-CA-000218-WC, 2015-CA-000392-WC
& 2015-CA-000422-WC
V.       WORKERS' COMPENSATION BOARD NOS. 03-WC-69871,
03-WC-73193, 04-WC-02145, 06-WC-00502, &
07-WC-80884


INJURED WORKERS PHARMACY; KEVIN                    APPELLEES
KERCH; DONALD GRAMMER; KEM
BARNES; RITA MERRICK; SHAUNA LITTLE
F/K/A HARDIN; HON J. LANDON
OVERFIELD, CHIEF ADMINISTRATIVE LAW
JUDGE; WORKERS' COMPENSATION
BOARD; AND JACK CONWAY, ATTORNEY
GENERAL


AND

INJURED WORKERS PHARMACY; KEVIN                    CROSS-APPELLANTS
KERCH; DONALD GRAMMER; AND KEM
BARNES


                    ON APPEAL FROM COURT OF APPEALS
                 CASE NOS. 2015-CA-000218-WC, 2015-CA-000392-WC
                           & 2015-CA-000422-WC
V.          WORKERS' COMPENSATION BOARD NOS. 03-WC-69871,
              03-WC-73193, 04-WC-02145, 06-WC-00502, &
                            07-WC-80884


STEEL CREATIONS BY AND THROUGH                     CROSS-APPELLEES
KESA, THE KENTUCKY WORKERS'
COMPENSATION FUND; PRESTON
HIGHWAY METERED CONCRETE, BY AND
THROUGH KESA, THE KENTUCKY
WORKERS' COMPENSATION FUND;
MURRAY ELECTRONICS, BY AND
THROUGH KESA, THE KENTUCKY
WORKERS COMPENSATION FUND; FAMILY
ALLERGY AND ASTHMA, BY AND
THROUGH KESA, THE KENTUCKY
WORKERS' COMPENSATION FUND;
SAMARITAN ALLIANCE, BY AND THROUGH
KESA, THE KENTUCKY WORKERS'
COMPENSATION FUND; JACK CONWAY,
ATTORNEY GENERAL; DWIGHT LOVAN,
COMMISSIONER, DEPARTMENT OF
WORKERS' CLAIMS; HON. J. LANDON
OVERFIELD, CHIEF ADMINISTRATIVE LAW
JUDGE; WORKERS' COMPENSATION
BOARD; RITA MERRICK; AND SHAUNA
LITTLE (HARDIN)

              **OPINION OF THE COURT BY JUSTICE KELLER**

          **AFFIRMING IN PART, VACATING IN PART, AND REMANDING**


                                   2

This matter arose from five separate medical fee disputes filed by KESA, the Kentucky Workers' Compensation Fund, on behalf of its insureds–Steel Creations, Preston Highway Metered Concrete, Murray Electronics, Family Allergy and Asthma, and Samaritan Alliance. The disputes were filed against the Injured Workers' Pharmacy (IWP) and the insureds' employees/former employees–Kevin Kerch, Donald Grammer, Kem Barnes, Rita Merrick, and Shauna Little (Hardin), all of whom had their prescriptions filled by IWP. This litigation has involved three primary issues: (1) whether a pharmacy/pharmacist is a medical provider; (2) whether an injured worker is entitled to choose which pharmacy he or she uses to fill prescriptions or whether that "choice" belongs to the employer or its insurer; and (3) how to interpret the pharmacy fee schedule. The Chief Administrative Law Judge (CALJ) found that a pharmacy/pharmacist is a medical provider, which entitles an injured worker to choose where to have his or her prescriptions filled. The CALJ also found the pharmacy fee schedule is based on the amount a pharmacist pays a wholesaler for medication, and that IWP is entitled to interest on any underpayment by KESA. Finally, the CALJ found that KESA had brought its medical fee disputes "without reasonable ground and without reasonable medical or factual foundation." Therefore, the CALJ ordered KESA to pay the entire cost of the proceedings to IWP, Kem Barnes, Kevin Kerch, and Donald Grammer.[1] The Workers' Compensation Board (the Board) reversed the

---

[1] It appears that Shauna Little (Hardin) did not participate in the litigation. It is unclear why the CALJ did not award costs to Rita Merrick.

3

CALJ's award of costs but otherwise affirmed. The Court of Appeals affirmed the Board. For the following reasons, we affirm in part, vacate in part, and remand.

## I. BACKGROUND.

The factual bases for the underlying individual claims are not dispositive of this appeal. However, they bear mentioning and we briefly summarize each claim below. Before doing so, we note that the underlying five claims were not consolidated but were assigned to the CALJ and joined for litigation purposes. Because the claims were not consolidated, the parties filed essentially the same evidence in each of the individual claims.[2] We address that jointly filed evidence separately after our summary of the individual claims.

### A. Rita Merrick

Merrick, who worked for Family Allergy and Asthma Associates, suffered a work-related back injury on December 10, 2003. She subsequently underwent lumbar spine surgery and an Administrative Law Judge (ALJ) awarded her medical expense benefits and income benefits based on a 26.455 permanent disability rating with entitlement to the three times multiplier pursuant to Kentucky Revised Statute (KRS) 342.730(1)(c)1. Following the ALJ's award, the parties filed several motions to reopen, culminating in the motion KESA filed on March 31, 2010, which is the subject of this appeal.

---

[2] We note that several depositions were filed only in the Kevin Kerch claim. However, the parties and the CALJ treated these depositions as applicable to all of the claims. We do so as well.

4

In its motion, KESA stated that it had provided Merrick with a medical card that permitted her to "conveniently purchase prescription drugs at the local pharmacies at a contracted price." KESA also stated that it had advised Merrick that the medical card was provided through a program administered by M. Joseph Medical (M. Joseph) and that KESA would only pay prescription bills submitted through the M. Joseph program.

According to KESA, it had an agreement with M. Joseph which enabled KESA to reimburse Merrick's pharmacy "at a potentially lower price than what is required in the administrative regulation's fee schedule for prescription drugs." KESA noted that Merrick was not getting her prescriptions filled through the M. Joseph program but was getting them filled through IWP. KESA sought an order requiring Merrick to participate in the M. Joseph program.

In her response, Merrick stated that she had difficulty getting her prescriptions timely filled when going through KESA or a KESA required pharmacy. However, she experienced no such problems when getting her prescriptions filled through IWP. The ALJ granted KESA's motion and reopened Merrick's claim.

During the course of the litigation, Merrick testified that, when she presented a prescription at a KESA approved pharmacy, she had to wait while the pharmacist obtained authorization from KESA to fill it. This often resulted in multiple trips to the pharmacy, phone calls to the adjuster at KESA, and delays in getting her prescriptions filled that could extend to several days. As a

5

result, Merrick contacted her attorney, who referred her to IWP. Once Merrick switched to IWP, she began getting her prescriptions through the mail, and she did not experience any delays.

## B. Donald Grammer

Grammer suffered a neck injury while working for Preston Highway Metered Concrete. He underwent a two-level cervical fusion and the ALJ awarded medical expense benefits and income benefits based on a 35% permanent impairment rating enhanced by the three times multiplier in KRS 342.730(1)(c)1. Citing the same reasons it cited in Merrick's claim, KESA filed a motion to reopen Grammer's claim to contest his use of IWP to fill his prescriptions. The ALJ granted KESA's motion, and during the course of the subsequent litigation, Grammer testified that he switched to IWP to fill his prescriptions because he had experienced delays when using a KESA-preferred pharmacy. As did Merrick, Grammer testified that he often had to wait to get his prescriptions filled because the KESA-preferred pharmacist had to get authorization, a delay he did not experience with IWP.

## C. Shauna Little (Hardin)

Little, a registered nurse, suffered a work-related neck injury and underwent a two-level cervical discectomy and fusion. An ALJ awarded Little medical expense benefits and income benefits based on a 27% permanent impairment rating enhanced by the three times multiplier in KRS 342.730(1)(c)1. Three years after the ALJ rendered the opinion, KESA filed a motion to reopen Little's claim to contest medical expenses citing the same

6

reasons it cited in the Merrick and Grammer claims. The ALJ granted KESA's motion but Little, who failed to appear at her deposition and who filed no evidence, did not actively participate in this litigation.

**D.     Kem Barnes**

Barnes suffered a work-related low back injury and settled his claim for a lump sum based on a 5% permanent impairment rating. The settlement provided that Barnes's employer would remain liable for medical expenses. Slightly less than four years after the settlement, KESA filed a motion to reopen Barnes's claim citing the same reasons it cited in the Little, Merrick, and Grammer claims. The ALJ granted KESA's motion, and Barnes testified about the difficulties he had getting his prescriptions filled before he switched to IWP.

**E.     Kevin Kerch**

Kerch suffered a work-related left upper extremity injury in July 2007. In February 2009, the parties settled Kerch's claim based on a 24% permanent impairment rating and provided that Kerch's employer would remain liable for medical expense benefits. Approximately a year later, KESA filed a medical fee dispute contesting Kerch's use of IWP to fill his prescriptions, which the ALJ granted. As did the others, Kerch testified about the difficulties he had getting his prescriptions filled at the KESA preferred pharmacy.

**F.     Common elements to all claims.**

In further support of its position on reopening, KESA stated it had concluded that it had the right to direct the claimants to a pharmacy because KRS 342.020 did not provide the option for claimants to make that choice. In

7

support of that conclusion, KESA attached an opinion from the Attorney General given in response to a request from state Senator Tom Jensen. In that opinion, the Attorney General set out the following facts as presented by Senator Jensen: (1) some physicians required their workers' compensation patients to use IWP; (2) IWP charged insurers "the full fee schedule, which is generally 25% greater" than what the insurers were charged by other area pharmacies; and (3) IWP complained because KESA was reimbursing it at the lower rate.

In response to the Senator's specific questions, the Attorney General noted that, while KRS 342.0011(15) lists medicines as a "medical service," the statute contains no definition for "medical provider." Because "medical services" does not appear in the context of medical provider choice, the Attorney General concluded that a pharmacy is not a medical provider for choice of provider purposes. Therefore, an employer or insurer could direct a claimant to a particular pharmacy or group of pharmacies. The Attorney General also stated that there was no case law regarding this, which ignored a Board opinion stating that pharmacies are medical providers. Finally, the Attorney General stated that an employer or insurer could not enter into a fee agreement and force a non-party to that agreement to accept the agreed to fee.

**G.    Evidence common to all claims.**

The parties filed a substantial amount of evidence regarding the business models of IWP and M. Joseph; the various methods that arguably can be or should be used to determine the average wholesale price of pharmaceuticals;

8

and the advantages and disadvantages to using each of those methods. We summarize that evidence below to the extent it is necessary to understand the disputes among the parties.

IWP has a warehouse and retail outlet in Andover, Massachusetts. It fills prescriptions, in pertinent part, for injured workers and primarily markets itself to plaintiffs' attorneys. Therefore, most of its "referrals" are from plaintiffs' attorneys, as is the case with the five individual claimants herein. We note that, despite the statements in the Attorney General's opinion, there was no evidence presented that any physicians required their patients to use IWP.

After an injured worker enrolls with IWP and IWP receives a prescription, it verifies the authenticity of the prescription and fills it without requiring authorization from the insurer. If an ALJ subsequently determines that the prescription was for a nonwork-related condition or otherwise is not compensable by the insurer, IWP will not balance bill the patient but will write off the cost of any non-covered medication. IWP undertakes this risk because it views itself as a patient advocate and does not want to unnecessarily delay providing prescribed medication.

IWP, which operates in a number of states, charges insurers for medication it dispenses pursuant to its interpretation of the appropriate fee schedule. In Kentucky, IWP charges the "average wholesale price," as set forth

9

in a publication known as "Medi-Span."[3] IWP charges the published average wholesale price regardless of what it actually pays for the medication it dispenses.

M. Joseph acts as a "middle-man" between KESA and several pharmacy benefit management companies, which act as middlemen between pharmacies and pharmaceutical manufacturers.[4] Pharmacy benefit management companies have contracts with a number of pharmacies to provide medication to those pharmacies at an agreed to price. That price reflects the price the pharmacy benefit management companies have negotiated with the pharmaceutical manufacturers and includes discounts for volume as well as for manufacturer provided rebates. The pharmacies bill the pharmacy benefit management companies based on the agreed to price.

Pursuant to M. Joseph's contracts with the pharmacy benefit management companies, the companies bill M. Joseph for the medications that claimants of M. Joseph clients have purchased. The pharmacy benefit management companies add an "upcharge" to what the pharmacies bill before sending the bills to M. Joseph. M. Joseph then adds an "upcharge" to that amount and bills its clients.

---

[3] It appears that IWP may have used a publication known as "First Databank" at some point during the litigation. However, First Databank apparently no longer publishes data regarding average wholesale pharmaceutical prices and IWP switched to Medi-Span.

[4] Claiming that it was a trade secret, representatives of M. Joseph would not identify the pharmacy benefit management companies with which it has contractual relationships.

10

M. Joseph's primary fact witness, Michael Bartlett, testified that he did not know how much the pharmacy benefit management companies added as an upcharge, and he refused to testify about the amount M. Joseph added as an upcharge claiming that information is a trade secret. Furthermore, none of the witnesses could or would testify regarding the agreed to price for medications that had been negotiated between the pharmacy benefit management companies and the pharmacies.

KESA has a "hand-shake" agreement with M. Joseph whereby M. Joseph provides a prescription card to KESA's insureds that the insureds can use at most pharmacies in the Commonwealth. When the insured presents the card to get a prescription filled, the pharmacist can verify if the prescription is authorized.[5] If it is not, the pharmacist calls a representative from M. Joseph who then contacts an adjuster at KESA. The adjuster will then either authorize the pharmacist to fill the prescription or advise the pharmacist and the insured that additional information is needed. It is this authorization procedure that causes the delays about which the named claimants complained.

M. Joseph markets itself by representing that it can provide prescription medications to insureds at an average cost that is approximately 25% below the average wholesale price. It is unclear whether M. Joseph uses a published average wholesale price when making this assertion; however, it appears that is the case. KESA filed into evidence spreadsheets showing the difference

---

[5] It is unclear if a pharmacist is required to obtain authorization; however, it is undisputed that most if not all pharmacists, with the exception of the pharmacists at IWP, will not fill a prescription without receiving authorization.

11

between what M. Joseph charges for prescriptions and what IWP charges. For some medications the difference is as much as several hundred dollars and for others there is little to no difference.

In addition to the preceding, the parties filed voluminous testimony about the difference between the published average wholesale price and the actual average wholesale price. According to KESA's expert witness, the published average wholesale price is provided to the publishers by the pharmaceutical manufacturers and has no relationship to what wholesalers actually charge. A more accurate measure, although it is not exact either, is the published wholesale acquisition cost, which is a reflection of what the wholesalers pay the manufacturers. However, this number, like the number for the published average wholesale price, is also provided by the manufacturers. It appears that most states use the published average wholesale price and/or the wholesale acquisition cost as a starting point for pricing purposes but do not explicitly adopt either in toto.

Neither party filed any evidence regarding the actual wholesale price IWP pays for the medications it dispenses. However, we note that, for nearly two and a half years of this litigation, KESA did not challenge IWP's charges as being in excess of the prescription fee schedule. In fact, KESA did not officially list that as an issue until September 7, 2012, which was after the vast majority of the depositions had been taken and filed.[6]

_____

[6] The only arguably dispositive deposition taken after September 7, 2012 was an update deposition of KESA's expert, Dr. Rost.

.12

In a rare step in workers' compensation claims, KESA joined the Commissioner of the Department of Workers' Claims (the Department) as a party. The Commissioner testified that 803 KAR 25:092, which is commonly known as the pharmacy fee schedule, controls how prescription fees are charged and it "speaks for itself." The average wholesale price is "the average wholesale price of a given drug at a specific point in time." The Commissioner stated that he did not know what proof the parties would need to put forth to establish what the average wholesale price is; however, he noted that the Department had not adopted any pricing publications. Determining what price meets the regulatory definitions would be a matter for an ALJ, not the Commissioner. Finally, the Commissioner noted that, years prior to the Attorney General's opinion, the Board had determined that a pharmacy is a medical provider, and the Department follows Board opinions until an appellate court rules to the contrary.

**H.    The ALJ's Opinion.**

Following a number of petitions for reconsideration, the ALJ ultimately made five findings/decisions that are pertinent to this appeal. First, he found that a pharmacy is a medical provider, which entitles a claimant to choose which pharmacy to use.

Second, he found that 803 KAR 25:092 §§ 1 and 2 neither mandate nor exclude consideration of a published average wholesale price, and they should be interpreted as follows:

> (a)  Pursuant to 803 KAR 25:092§1(6), "wholesale price" is the average wholesale price <u>drugstores (or any other pharmaceutical</u>

13

providers) pay to wholesalers when purchasing pharmaceuticals for distribution in filling prescriptions for customers.

(b) A pharmacist filling prescriptions for an injured worker which requires dispensing brand name drugs for a workers[sic] compensation injury is entitled to be reimbursed in an amount equal to the wholesale price as determined pursuant to 803 KAR 25:092§1(6) the pharmacist paid for the drug dispensed plus a five dollar ($5.00) fee and any applicable federal or state tax or assessment.

(c) A pharmacist filling prescriptions for an injured worker for a workers [sic] compensation injury with drugs which are not brand name drugs is entitled to be reimbursed in an amount equal to the wholesale price as determined pursuant to 803 KAR 25:092§1(6) the pharmacist paid for the lowest price drug which is therapeutically equivalent to the drug use[d] to fill the prescription which the pharmacist has in stock in his establishment at the time he fills the prescription, plus a five dollar ($5.00) dispensing fee and any applicable federal or state tax or assessment.

(Emphasis added.)

Third, the CALJ found that KESA "brought and prosecuted [the medical fee disputes] without reasonable ground and without reasonable medical or factual foundation" and he assessed the entire cost of the proceedings to the claimants. Fourth, the CALJ ordered KESA to "pay all contested pharmaceutical bills . . . pursuant to KRS 342.020 and the pertinent regulations." Finally, the ALJ found that IWP is not entitled to interest on any unpaid or overdue balances it claims.

Both parties appealed to the Board. KESA argued, in pertinent part, that: the CALJ correctly found that a pharmacy should be paid based on the actual average wholesale price the pharmacy paid for dispensed medication; the CALJ incorrectly found that the regulation does not require exclusion of the use of published average wholesale prices when calculating the amount a

14

pharmacy is owed; the CALJ erred in assessing costs; and the CALJ erred in finding a pharmacy is a medical provider. IWP argued that the CALJ erred when he failed to award interest on any past due payments.

The Board agreed with KESA that the award of sanctions was not justified, but otherwise affirmed the CALJ. Both parties sought review by the Court of Appeals, and the Court of Appeals affirmed the Board. In doing so, the Court of Appeals erroneously stated that the CALJ had ordered KESA to pay IWP based on the published average wholesale price that IWP had charged. This misstatement by the Court of Appeals appears to be fueling, in large part, KESA's appeal to this Court.

As noted above, the parties raise essentially the same issues they have argued throughout this litigation. We address those issues below.

## II. STANDARD OF REVIEW.

The issues presented by the parties primarily require us to interpret statutory and regulatory provisions, which we review *de novo*. *Saint Joseph Hosp. v. Frye*, 415 S.W.3d 631, 632 (Ky. 2013). However, we defer to the CALJ with regard to factual determinations and, when the issues involve mixed questions of fact and law, we have greater latitude to determine if the underlying opinion is supported by probative evidence. *See Purchase Transp. Services v. Estate of Wilson*, 39 S.W.3d 816, 817-18 (Ky. 2001).

## III. ANALYSIS.

### A. The CALJ correctly determined that a pharmacy is a medical provider.

15

KESA argues that workers' compensation claimants are not entitled to choose a pharmacy because a pharmacy is not a medical provider. The CALJ, the Board, and the Court of Appeals found to the contrary.

To resolve this issue we must look to two statutory provisions, KRS 342.020(1) and KRS 342.0011(15). KRS 342.020(1) provides that:

> In addition to all other compensation provided in this chapter, the employer shall pay for the cure and relief from the effects of an injury or occupational disease the medical, surgical, and hospital treatment, including nursing, medical, and surgical supplies and appliances, as may reasonably be required at the time of the injury and thereafter during disability, or as may be required for the cure and treatment of an occupational disease. The employer's obligation to pay the benefits specified in this section shall continue for so long as the employee is disabled regardless of the duration of the employee's income benefits. *In the absence of designation of a managed health care system by the employer, the employee may select medical providers to treat his injury or occupational disease.* Even if the employer has designated a managed health care system, the injured employee may elect to continue treating with a physician who provided emergency medical care or treatment to the employee. The employer, insurer, or payment obligor acting on behalf of the employer, shall make all payments for services rendered to an employee directly to the provider of the services within thirty (30) days of receipt of a statement for services. The commissioner shall promulgate administrative regulations establishing conditions under which the thirty (30) day period for payment may be tolled. The provider of medical services shall submit the statement for services within forty-five (45) days of the day treatment is initiated and every forty-five (45) days thereafter, if appropriate, as long as medical services are rendered. Except as provided in subsection (4) of this section, in no event shall a medical fee exceed the limitations of an adopted medical fee schedule or other limitations contained in KRS 342.035, whichever is lower. The commissioner may promulgate administrative regulations establishing the form and content of a statement for services and procedures by which disputes relative to the necessity, effectiveness, frequency, and cost of services may be resolved.

(Emphasis added.)

16

There is no definition of "medical provider" in KRS Chapter 342. However, KRS 342.0011(15) defines "medical services" as: "medical, surgical, dental, hospital, nursing, and medical rehabilitation services, *medicines*, and fittings for artificial or prosthetic devices." (Emphasis added.) As did the Court of Appeals, we hold that the plain meaning of these two statutes is that a medical provider is one who provides medical services. Since medicines are "medical services," and a pharmacist provides that medical service, a pharmacist is a medical provider. Therefore, absent an employer's participation in a managed health care system, claimants are free to choose which pharmacy to use.

We note KESA's argument that such a holding will "open a door through which other commercial operators . . . could pass." However, if that door has been opened, it is the General Assembly that opened it, not the Court. Furthermore, to the extent those other commercial operators are subject to the appropriate fee schedule, we fail to see how KESA would be harmed by a claimant exercising that choice.

**B.    The CALJ correctly interpreted the "pharmacy fee schedule."**

The workers' compensation "pharmacy fee schedule" is set forth in 803 KAR 25:092. We put that phrase in quotation marks because this fee schedule is not what we typically think of as a fee schedule. It does not set out specific

17

reimbursement rates for medications and it does not adopt any specific published schedule of reimbursement rates.[7]  Rather it provides as follows:

> Any duly licensed pharmacist dispensing pharmaceuticals pursuant to KRS Chapter 342 shall be entitled to be reimbursed in the amount of the equivalent drug product wholesale price of the lowest priced therapeutically equivalent drug the dispensing pharmacist has in stock, at the time of dispensing, plus a five (5) dollar dispensing fee plus any applicable federal or state tax or assessment.

803 KAR 25:092 § 2.  "Wholesale price" is defined as "the average wholesale price charged by wholesalers at a given time."  803 KAR 25:092 § 1(6).

The CALJ interpreted the fee schedule as entitling a pharmacist to reimbursement based on the average wholesale price the pharmacist paid for a given medication, plus the dispensing fee.  In doing so, the CALJ stated that the regulation neither adopted nor excluded the use of a published average wholesale price guide to determine the appropriate reimbursement rate.  The Board and the Court of Appeals agreed with the CALJ.

KESA agrees with the CALJ's interpretation of the regulation.  However, it argues on appeal that the evidence compelled a finding that the published average wholesale price cannot be the basis for determining reimbursement rates in this case.  IWP on the other hand argues that the published average wholesale price can be used and should be used to determine the reimbursement rate.  We address each argument in turn below.

---

[7] It appears from the evidence that the published and actual average wholesale prices of pharmaceuticals change frequently, with the published guides being updated frequently.

18

KESA is correct that its expert testified that published average wholesale prices have little to do with actual wholesale prices. However, neither that testimony nor the regulation itself compel the finding KESA seeks. We note that KESA's own witness testified that IWP's prices were in keeping with the pharmacy fee schedule, testimony the CALJ could have chosen to believe. Furthermore, although M. Joseph claimed that it obtained medication for KESA at an average of 25% less than the average wholesale price, spreadsheets filed by KESA show that the M. Joseph and IWP prices for some medications were the same. Thus, KESA's proof was, at least in part, inconsistent with its argument. Finally, if the Department of Workers' Claims had wanted to exclude the use of published average wholesale prices, it could have specifically stated as much in its regulation.

As to IWP's argument, the regulation does not mandate or even suggest that published average wholesale prices should be used to determine the appropriate reimbursement rate. Furthermore, IWP's argument to the contrary notwithstanding, the Commissioner testified that the Department has not taken the position that a published price controls the reimbursement price. Therefore, IWP's argument that those guides should be the sole arbiter of reimbursement rates is without merit.

So, how should pharmacy reimbursement rate disputes be resolved? The same way all other disputes under KRS 342 are resolved. The parties present their proof, and the ALJ makes a determination. The ALJ may, but is not required to, take into consideration the published average wholesale price. The

19

ALJ may also take into consideration the wholesale acquisition price, which has some connection to what a wholesaler would charge a retailer. However, unless the ALJ determines that the published average wholesale price or the wholesale acquisition price is the actual average wholesale price the pharmacist paid, the ALJ may not simply adopt either of those pricing guides *in toto*.[8] The ALJ must determine the actual wholesale price the pharmacist paid, which may or may not have a relevant correlation to either the published average wholesale price or the wholesale acquisition price. Regardless, the ALJ, by exercising the discretion granted to him or her, must determine what the appropriate reimbursement rate is under the regulation.

We recognize that this could, as IWP argues, put a considerable strain on the already busy ALJs. That may or may not be the case. However, if that occurs, the Department can take the appropriate steps to remedy the situation by amending the regulation.

As to this case, the CALJ did not order KESA to reimburse IWP based on the published average wholesale price that IWP charged. He ordered KESA to reimburse IWP pursuant to the statute and regulations, which he correctly interpreted to be the actual average wholesale price IWP paid. However, the

---

[8] For the sake of clarity, we are not stating that any of the pricing guides are *per se* admissible. Any such guide must be admissible pursuant to 803 KAR 25:010 Section 14, and the ALJ is free to exercise his or her discretion in either admitting or excluding a proffered pricing guide within the confines of that regulation. Based on the record before us in this case, it appears that the published average wholesale price guides and the wholesale acquisition price guide may not be particularly relevant. However, none of the parties have sought to introduce into evidence any of those pricing guides. If a party attempts to do so and there is an objection, the ALJ must undertake the appropriate analysis before admitting or excluding any proffered pricing guides.

20

CALJ did not make any specific findings regarding the actual average wholesale price IWP paid for the medications it dispensed.

KESA's argument that its payment to IWP based on the M. Joseph agreement satisfies the regulation is without merit. As we understand this argument, KESA believes that the pharmacy benefit management companies with which it has contractual relationships have established the average wholesale price through their contracts with the pharmacies. Thus, by paying IWP the M. Joseph price, KESA is paying the actual average wholesale price. However, the regulation states that reimbursement is based on what the dispensing pharmacy (IWP) paid for medications, not what another dispensing pharmacy (Walgreens, Kroger, Meijer, etc.) may have paid. Therefore, this matter must be remanded to the Department for assignment to an ALJ with instructions to make findings regarding what IWP's actual average wholesale price was for the medications at issue.

Finally, we note that 803 KAR 25:092 § 3(4) provides that "[a]ny insurance carrier, self-insured employer or group self-insured employer may enter into an agreement with any pharmacy to provide reimbursement at a lower amount than that required in this administrative regulation." Thus, there is no prohibition against the arrangement KESA has with M. Joseph and there would be no prohibition against KESA entering into a similar arrangement with IWP. However, KESA cannot unilaterally impose its M. Joseph agreement on IWP.

21

**C. The CALJ correctly found that KESA is not liable for interest on any past due amounts it owes IWP.**

On remand, the ALJ may find that KESA does not owe IWP any additional sums. However, because the ALJ could find otherwise, the issue of interest on past due benefits may arise. Therefore, we address it.

"It is fundamental that administrative agencies are creatures of statute and must find within the statute warrant for the exercise of any authority which they claim." *Dept. for Nat. Res. and Envtl. Prot. v. Stearns Coal & Lumber Co.*, 563 S.W.2d 471, 473 (Ky. 1978). KRS 342.040 provides for the assessment of interest on past due income benefits; however, there is no corollary for payment of interest on past due medical expense benefits. We presume that the General Assembly acted intentionally when it provided for the payment of interest on past due income benefits while omitting the payment of interest from past due medical expense benefits. *See Turner v. Nelson*, 342 S.W.3d 866, 873 (Ky. 2011). Therefore, we agree with the CALJ, the Board, and the Court of Appeals that IWP is not entitled to any interest on any past due payments.

**D. The Board correctly reversed the CALJ's assessment of costs.**

The CALJ found that the Attorney General's opinion did not provide a reasonable legal or factual basis for KESA's decision to direct the named claimants to use the M. Joseph program to obtain their medications. In doing so, the CALJ noted that the Attorney General's opinion: (1) stated that the claimants did not have the right to choose their pharmacy, but it did not state that KESA had the right to make that choice; (2) was based in part on the

22

incorrect assertion that physicians were directing their patients to IWP; and (3) ran counter to a Board opinion. Based primarily on the preceding findings, the CALJ ordered KESA to pay the entire cost of the proceedings. The Board found that the Attorney General's opinion was sufficient to support KESA's actions. The Court of Appeals agreed with the Board. We agree with the ultimate decisions by the Board and the Court of Appeals but for somewhat different reasons.

KRS 342.310 provides, in pertinent part, that an ALJ "may assess the whole cost of the proceedings" if he determines that the proceedings were "brought, prosecuted, or defended without reasonable ground." Whether to assess such cost is within the ALJ's discretion. *Richey v. Perry Arnold, Inc.*, 391 S.W.3d 705, 713 (Ky. 2012).

If the only issue before the CALJ was whether KESA could direct the claimants to use KESA approved pharmacies, we might be convinced that the Board and the Court of Appeals overstepped their bounds. It was within the CALJ's discretion to find that the opinion of the Attorney General was not a sufficient basis to support KESA's action, particularly in the face of a Board opinion to the contrary. However, as the litigation progressed, the interpretation of KAR 25:092 became an issue as did the appropriateness of IWP's charges. This was an issue of first impression, which KESA had a reasonable legal and factual basis to challenge. Because the CALJ did not factor this issue into his decision to assess costs, he abused his discretion.

23

Therefore, we affirm the Court of Appeals and the Board in their reversal of the CALJ's assessment of the cost of the proceedings against KESA.

## IV. CONCLUSION.

For the foregoing reasons, we affirm the Court of Appeals opinion regarding the assessment of interest and sanctions. We also affirm the Court of Appeals that a pharmacy is a medical provider. However, we vacate the remainder of the Court of Appeals opinion and remand because the CALJ did not make a determination regarding the actual average wholesale price paid by IWP. On remand, the ALJ, or CALJ if appropriate, must determine what IWP's actual average wholesale price was for the contested medications. The ALJ, or CALJ if appropriate, may reopen proof if he or she deems it necessary to do so.

Minton, C.J.; Cunningham, Hughes, Keller, Venters, JJ., and Special Justices David Samford and Kimberly McCann, sitting. All concur. VanMeter and Wright, JJ., not sitting.

24

COUNSEL FOR APPELLANTS/CROSS-APPELLEES, STEEL CREATIONS, BY AND THROUGH KESA, THE KENTUCKY WORKERS' COMPENSATION FUND; MURRAY ELECTRONICS, BY AND THROUGH KESA, THE KENTUCKY WORKERS' COMPENSATION FUND; FAMILY ALLERGY AND ASTHMA, BY AND THROUGH KESA, THE KENTUCKY WORKERS' COMPENSATION FUND; AND SAMARITAN ALLIANCE, BY AND THROUGH KESA, THE KENTUCKY WORKERS' COMPENSATION FUND:

Joseph L. Ardery
Griffin Terry Sumner
Frost Brown Todd, LLC

James Gordon Fogle
Fogle Keller Purdy, PLLC


COUNSEL FOR APPELLANT/CROSS-APPELLEE, PRESTON HIGHWAY METERED CONCRETE, BY AND THOUGH KESA, THE KENTUCKY WORKERS' COMPENSATION FUND:

Joseph L. Ardery
Griffin Terry Sumner
Frost Brown Todd, LLC

James Gordon Fogle
Fogle Keller Purdy, PLLC

Natalie Laszkowski
Fulton & Devlin, LLC


COUNSEL FOR APPELLEE/CROSS-APPELLANT, INJURED WORKERS' PHARMACY:

Charles E. Jennings

Eric M. Lamb
Lamb & Lamb, PSC


COUNSEL FOR APPELLEES/CROSS-APPELLANTS, KEVIN KERCH AND DONALD GRAMMER:

Charles E. Jennings

COUNSEL FOR APPELLEE/CROSS-APPELLANT, KEM BARNES:

Jeffery Roberts
Roberts Law Office

COUNSEL FOR APPELLEE/CROSS-APPELLEE, RITA MERRICK:

McKinnley Morgan
Morgan Collins & Yeast

COUNSEL FOR APPELLEE/CROSS-APPELLEE, SHAUNA LITTLE F/K/A
HARDIN:

Paul Guthrie

COUNSEL FOR APPELLEE/CROSS-APPELLEE, JACK CONWAY, ATTORNEY
GENERAL:

Andy Beshear
Attorney General of Kentucky

James Robert Carpenter
Assistant Attorney General

COUNSEL FOR AMICUS CURIAE, INSURANCE INSTITUTE OF KENTUCKY:

Kenneth J. Dietz
Lucas & Dietz, PLLC

COUNSEL FOR AMICUS CURIAE, KENTUCKY ASSOCIATION OF GENERAL
CONTRACTORS:

Gregory Lonzo Little
Ferreri Partners PLLC